Debra Hulett, Bar No. 8-6904
Senior Assistant Attorney General
Prentice B. Olive, Bar No. 8-6691
Assistant Attorney General
Wyoming Attorney General's Office
109 State Capitol
Cheyenne, Wyoming 82002
(307) 777-7580
(307) 777-3608
(307) 777-8920 Facsimile
debra.hulett@wyo.gov
prentice.olive@wyo.gov

Attorneys for Defendants Eckerdt and McCaslin
in their individual capacities

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| RYAN DAVIS, an individual, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 23-CV-00230-SWS |
| | ) | |
| THE CITY OF POWELL, WYOMING, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## INDIVIDUAL DEFENDANTS ECKERDT AND MCCASLIN'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Based on Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants Roy Eckerdt and Matt McCaslin, in their individual capacities, submit this memorandum in support of their motion to dismiss Plaintiff's Complaint.

## I.      PRELIMINARY STATEMENT

Plaintiff Ryan Davis filed a thirteen-count Complaint in this employment-practice case based on his brief period of employment as a police officer with the City of Powell. The eleven

claims he asserts against Eckerdt and McCaslin in their individual capacities should be dismissed because as to each, the Complaint fails to state a claim under Rule 12(b)(6).

## II.    ALLEGATIONS OF THE COMPLAINT

For seven years, Ryan Davis lived and worked in California as a sheriff's deputy. (ECF No. 1 at ¶¶ 1, 20, 22). He wanted to leave California and looked at "several different states across the country." (ECF No. 1-2). Davis's "buddy" told him that Northern Wyoming was "beautiful and welcoming," and Davis "started looking for work in Wyoming." (ECF No. 1 at ¶¶ 1, 22-23). In December 2020, "after communications and negotiations," Davis received a job offer to work as a Police Officer I with the Powell Police Department in Wyoming. (*Id*. at ¶ 23). In accepting the job offer, Davis elected to accept "a significant pay reduction." (*Id*. at ¶ 22). Davis later moved from Sacramento, California to Powell. (*Id*. at ¶ 23).

Over a period covering 6 months and 20 days, Davis worked as a Powell police officer. On March 11, 2021, he was sworn in. (*Id*. at ¶¶ 2, 24-26; ECF No. 1-1, at p. 2 ¶¶ (a), (c)). In May 2021, Davis completed field training and began working on his own.[1] (ECF No. 1 at ¶ 37(c)).

On October 1, 2021, Davis "tested positive for COVID-19." (ECF No. 1-1 at p. 2 ¶ (c)). In October, November, and December 2021, Davis was off work because he was unable to "perform the normal job functions of a patrolling police officer." (ECF No. 1 at ¶ 25). In October 2021, Davis started receiving workers' compensation benefits, and Eckerdt "granted [FMLA] benefits" to Davis.[2] (*Id*. at ¶ 24).

On December 9, 2021, Davis's treating physician determined that, due to Davis's medical condition, Davis was unable to return to work and perform "normal police officer duties." (*Id*. at

---

[1] Davis does not assert that he was certified by Wyoming POST as a peace officer. *See* Wyo. Stat. Ann. § 9-1-704(c)-d), (g); POST Rules, Ch. 2, Section 1 and Ch. 3, Section 11.

[2] As Davis had not been employed with Powell for at least 12 months, he was not an "eligible employee" under the FMLA. *See* 29 U.S.C. § 2611(2)(A).

¶ 26). His physician kept him off work until he had a follow up appointment three months later (March 2022), at which point the doctor planned to reevaluate whether Davis was physically able to perform his job duties and return to work as a police officer. (*Id*.).

On January 7, 2022, Chief of Police Eckerdt, Human Resources Manager Brando, and City Administrator Thorington met with Davis. (*Id*. at ¶ 27). Davis had been off work over three months (or fourteen weeks). (*Id*. at ¶¶ 2, 24-26; ECF No. 1-1, at p. 2 ¶¶ (a), (c)). At the end of the meeting, Davis's employment was terminated. (ECF No. 1 at 27).

### III.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a complaint that fails to state a claim upon which relief can be granted should be dismissed. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citation omitted). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).

"The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief . . . 'Factual allegations must be enough to raise a right to relief above the speculative level.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citations omitted). In applying this standard, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678 (citation omitted). "A conclusory allegation is one in which an inference is asserted without 'stating underlying facts' or including 'any factual enhancement.'" *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1144 (10th Cir. 2023) (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678 (citation omitted). A court should "disregard conclusory statements and look only to whether

3

the remaining[] factual allegations plausibly suggest the defendant is liable." *Tavernaro v. Pioneer Credit Recovery, Inc.*, 43 F.4th 1062, 1067 (10th Cir. 2022) (citation omitted).

As the Tenth Circuit has observed, the pleading "'standard may have greater bite' in the context of a § 1983 claim against individual government actors, because 'they typically include complex claims against multiple defendants.'" *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011) (citation omitted). "'[I]t is particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations.'" *Id.* (emphasis in original) (citing *Robbins*, 519 F.3d at 1250).

## IV.    ARGUMENT

### A.    Claims 1 and 2 should be dismissed because they fail to state plausible claims for relief under the Americans with Disabilities Act and § 1983.

Davis characterizes his first claim, under 42 U.S.C. § 1983, as "Wrongful Termination" and "Depravation of Rights," under the Americans with Disabilities Act (ADA). (ECF No. 1 at 21). He asserts that he was disabled, and was terminated "based on his disability, in violation of the [ADA]." (*Id*. at 21-22). Similarly, Davis describes his second claim, brought under § 1983, as "Retaliation" under the ADA. (*Id*. at 22). Whether evaluated as standalone ADA claims or under § 1983, Davis fails to state plausible individual-capacity claims against Eckerdt and McCaslin.

### 1.    Eckerdt and McCaslin, in their individual capacities, cannot be liable for alleged discrimination or retaliation under the ADA.

Davis cannot maintain an ADA claim for discrimination or retaliation against Eckerdt and McCaslin in their individual capacities. *See Butler v. City of Prairie Vill.*, 172 F.3d 736, 744 (10th Cir. 1999) (holding "the ADA precludes personal capacity suits against individuals who do not otherwise qualify as employers under the statutory definition"); *see also Haynes v. Williams*, 88 F.3d 898, 901 (10th Cir. 1996) (holding "personal capacity suits against individual supervisors are

inappropriate under Title VII"); *Trainor v. Apollo Metal Specialties, Inc*., 318 F.3d 976, 983 n.4 (10th Cir. 2002) (recognizing Title VII and ADA have the same definition of "employer").

      2.      **Section 1983 cannot expand or alter the ADA's statutory enforcement scheme.**

Section 1983 is a "remedial vehicle," not a source of substantive rights. *Brown v. Buhman*, 822 F.3d 1151, 1161 n.9 (10th Cir. 2016) (citations omitted). "[T]o sustain a § 1983 action, the plaintiff must demonstrate that the federal statute creates an individually enforceable right in the class of beneficiaries to which he belongs." *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 120 (2005) (alteration added) (citation omitted). But "when 'a state official is alleged to have violated a federal statute which provides its own comprehensive enforcement scheme, the requirements of that enforcement procedure may not be bypassed by bringing suit directly under § 1983.'" *Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 20 (1981) (citation omitted). In *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, the Supreme Court held "§ 1985(3) may not be invoked to redress violations of Title VII." 442 U.S. 366, 378 (1979). The Supreme Court reasoned that Congress intended to establish Title VII as an exclusive enforcement scheme, so allowing a plaintiff to circumvent the statutory procedural requirements through § 1985(3) would impair its effectiveness. *Id*. at 376-78 (relying on "same basic reasons" from *Brown v. Gen. Servs. Admin.*, 425 U.S. 820 (1976)); *see also Brown*, 425 U.S. at 828-35 (holding "§ 717 of the Civil Rights Act of 1964 . . . provides the exclusive judicial remedy" for federal employment-discrimination claims). The Tenth Circuit extends *Novotny*'s reasoning to § 1983 claims. *See Poff v. Oklahoma ex rel. Okla. Dep't of Mental Health & Substance Abuse Servs*., 683 F. App'x 691, 698 (10th Cir. 2017) (stating "[A] right created solely under Title VII cannot serve as the basis for an independent remedy under Section 1983, lest Congress' prescribed remedies under Title VII be undermined") (quoting *Starrett v. Wadley*, 876 F.2d 808, 813 (10th Cir. 1989)).

Based on *Novotny* and the Tenth Circuit's holdings in *Butler*, *Starrett*, and *Poff*, when presented with the issue, the Tenth Circuit would likely conclude that a plaintiff may not use § 1983 to expand or alter statutory rights authorized by the ADA's Title I, including suing individuals for allegedly violating the ADA. Other courts of appeals have concluded a plaintiff may not assert an ADA Title I claim under § 1983. *See Williams v. Penn. Hum. Rels. Comm'n*, 870 F.3d 294, 299 (3d Cir. 2017); *Sneed v. City of Harvey*, 598 F. App'x 442, 446 n.1 (7th Cir. 2015); *Okwu v. McKim*, 682 F.3d 841, 846 (9th Cir. 2012); *Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1531 (11th Cir. 1997). These courts have reasoned in part that a plaintiff may not use § 1983 to alter the ADA's statutory enforcement scheme. *See Williams*, 870 F.3d at 298-99 (stating that "[a]llowing pure Title VII and ADA claims under § 1983 would thwart Congress's carefully crafted administrative scheme"); *Sneed*, 598 F. App'x at 446 n.1 (recognizing the plaintiff "could not invoke § 1983 to expand or supplant the ADA's comprehensive remedial scheme"); *Okwu*, 682 F.3d at 846 (stating "[b]y drafting a comprehensive remedial scheme for employer's violations of ADA Title I, Congress manifested an intent to preclude § 1983 remedies"); *Holbrook*, 112 F.3d at 1531 (concluding "a plaintiff may not maintain a section 1983 action in lieu of–or in addition to–[an] . . . ADA cause of action"). Because Davis may not use § 1983 to skirt the ADA's enforcement scheme, Claims 1 and 2 should be dismissed against Eckerdt and McCaslin.

## B. Claim 3 fails to state a plausible First Amendment retaliation claim.

In Claim 3, Davis appears to have intended to plead a First Amendment retaliation claim. Davis contends that he engaged in speech expressing his views about deficiencies in the police department's "training and policies." (ECF No. 1 at ¶ 49). Specific to Eckerdt and McCaslin,[3] Davis contends that during his spring 2021 field training, he objected to using a less-lethal weapon

---

[3] The remaining incidents contain only conclusory allegations about Eckerdt's or McCaslin's awareness.

system, made the department's supervisors and patrol staff aware, and Eckerdt and McCaslin responded "with indifference and anger." (*Id*. at 12-13). Also, Davis once refused a direct order by McCaslin to obtain a search warrant from another jurisdiction because Davis disagreed with McCaslin and thought he did not need a warrant. (*Id*. at 15-16). Once, after Davis declined to tow a vehicle, the dispatch supervisor communicated to Davis that he had mishandled the call. Davis disagreed, and made McCaslin aware of his position that Powell's policy on towing vehicles violated the Fourth Amendment, which "was not well received by" McCaslin. (*Id*. at 19-20). Finally, Davis believed Powell's "Computer Aided Dispatch System" was "misused and manipulated" by dispatchers,[4] and based on his personal belief, he told McCaslin he would not testify about anything in the dispatch system. (*Id*. at 17-18). Davis further asserts that "Defendants" "expressed . . . their dissatisfaction and annoyance" with Davis's statements. (*Id*.). He pleads that he was "fired in retaliation because he pointed out policy and training issues." (*Id*. at ¶ 38).

The *Garcetti*/*Pickering* test assesses whether a public employee's termination was retaliatory under the First Amendment. *Knopf v. Williams*, 884 F.3d 939, 945 (10th Cir. 2018) (citation omitted). Davis failed to plausibly plead two factors that would show his speech was protected by the First Amendment: that his speech was made outside his official duties, and that he spoke on a matter of public concern. *Id*. (citation omitted). Both are "issues of law for the court to decide." *Id*. (citation omitted).

"If the employee speaks pursuant to his official duties, then there is no constitutional protection because the restriction on speech simply reflects the exercise of employer control over what the employer itself has commissioned or created." *Id*. (citation omitted). "If the speech involves 'the type of activities that [the employee] was paid to do,' then it falls within the scope

---

[4] Davis may not know that Wyoming dispatchers must be POST-certified. *See* Wyo. Stat. Ann. § 9-1-708(a)-(b).

of an employee's duties." *Id*. (citation omitted). Also, "speech directed at an individual or entity within an employee's chain of command is often found to be pursuant to that employee's official duties." *Rohrbough v. Univ. of Colo. Hosp. Auth.*, 596 F.3d 741, 747 (10th Cir. 2010). Here, Davis describes specific instances where he acknowledges that while working as a police officer, he was directed to do something and objected to someone within his chain of command. While his statements may have expressed disagreement rather than assent, they concerned tasks he was paid to perform as a police officer. Consequently, the speech was commissioned by his employer, and the First Amendment did not protect it.

"Matters of public concern are those of interest to the community, whether for social, political, or other reasons." *Morris v. City of Colo. Springs*, 666 F.3d 654, 661 (10th Cir. 2012) (citation omitted). "The inquiry on whether speech pertains to a matter of public concern must consider the 'content, form, and context of a given statement.'" *Id*. (citation omitted). "[S]peech relating to internal personnel disputes and working conditions ordinarily will not be viewed as addressing matters of public concern." *Id*. (citation omitted). Here, Davis spoke as a public employee, rather than a private citizen. He contends he spoke only to his supervisors and others within the workplace in instances when he was asked to do something in the course of his work, and in response, he lodged personal objections, presumably in an effort to justify his conduct that otherwise would have been characterized as insubordinate. Because Davis's pleading shows he was speaking pursuant to his official duties, and he spoke as a public employee rather than on a matter of public concern, he fails to state a plausible First Amendment retaliation claim.

Finally, Davis fails to assert personal involvement by Eckerdt or McCaslin. *See Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation").

**C.      Claim 4 fails to state a plausible claim under 42 U.S.C. § 1985.**

Davis describes his fourth claim as "Conspiracy to Interfere with Civil Rights" under 42 U.S.C. § 1985. (ECF No. 1 at 23-24). "Section 1985(3) . . . *creates* no rights. It is a purely remedial statute, providing a civil cause of action when some otherwise defined federal right—to equal protection of the laws or equal privileges and immunities under the laws—is breached by a conspiracy in the manner defined by the section." *Novotny*, 442 U.S. at 376-77 (alteration added; emphasis in original). "The essential elements of a § 1985(3) claim are: (1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom." *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971)).

Initially, the conclusory allegations supporting this claim are insufficient. The allegations about a conspiracy "lack the supporting factual detail necessary to sustain a claim for relief." *Harris v. Am. Med. Int'l, Inc*., No. 91-1354, 1992 WL 367973, at *2 (10th Cir. Dec. 8, 1992).

As to the second element, Davis pleaded that Defendants intended to deprive him of equal privileges and immunities "in violation of the Americans with Disabilities Act." (ECF No. 1 at 24). As discussed, in *Novotny*, the Supreme Court held that "[u]nimpaired effectiveness can be given to the plan put together by Congress in Title VII only by holding that deprivation of a right created by Title VII cannot be the basis for a cause of action under § 1985(3)." 442 U.S. at 378. The same rationale precludes Davis from relying on the ADA. *See Post v. Trinity Health-Mich.*, 44 F.4th 572, 581 (6th Cir. 2022) (recognizing *Novotny*'s logic "would seem to apply in full force" to ADA claim under § 1985(3)); *Sauter v. Nevada*, No. 97-15795, 1998 WL 196630, at *1 (9th Cir. Apr. 23, 1998) (extending *Novotny* to preclude ADA claim under § 1985(3)). As Davis has not pleaded factual allegations "to provide any independent source to support a § 1985(3) claim," *Drake v. City of Fort Collins*, 927 F.2d 1156, 1163 (10th Cir. 1991), he fails to state a viable claim.

Finally, "§ 1985(3) does not 'apply to all tortious, conspiratorial interferences with the rights of others.'" *Tilton*, 6 F.3d at 686 (citing *Griffin*, 403 U.S. at 101-02). Instead, "'there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268-69 (1993) (citing *Griffin*, 403 U.S. at 102). Davis contends Defendants were motivated by "class-based discriminatory animus" based on his status as "a disabled person." (ECF No. 1 at ¶¶ 52, 55). In the Tenth Circuit, disability-based animus cannot state a claim under § 1985(3). *See Sullivan v. Hartford Fin. Servs. Grp.*, Nos. 22-3118, 22-3193, 2023 WL 4635888, at *3 (10th Cir. July 20, 2023); *Wilhelm v. Cont'l Title Co.*, 720 F.2d 1173, 1177 (10th Cir. 1983). As Davis failed to plead any other "racial or otherwise class-based discriminatory animus," this claim should be dismissed. *Serna v. Webster*, No. 23-2091, 2023 WL 6382099, at *3 (10th Cir. Oct. 2, 2023) (affirming dismissal of § 1985 claim, in part because plaintiff did not plead "any racial or otherwise class-based discriminatory animus").

**D.     Claims 5 and 6 fail to state plausible claims predicated on the alleged denial of substantive or procedural due process.**

In his substantive and procedural due process claims, Davis asserts in a conclusory manner that he had a property and liberty interest in his employment with Powell. (ECF No. 1 at 24-27). He contends Defendants denied him substantive due process by terminating his employment in violation of unidentified ordinances, policies and procedures. (*Id*. at 24-25). He pleads Defendants denied him procedural due process by terminating him without a hearing or opportunity to be heard. (*Id*. at 26-27).

To state a procedural due process claim associated with the termination of his employment, Davis had to plead facts showing that he had a protected property or liberty interest in his continued employment to which due process protection applied. *See Hennigh v. City of Shawnee*, 155 F.3d

1249, 1253 (10th Cir. 1998). "This usually requires tenure, an employment contract for a definite term, a clearly implied promise of continued employment, or a statute, regulation, or state-law-endorsed collective bargaining agreement that requires cause (or similar concepts) for termination." *Earles v. Cleveland*, 825 F. App'x 544, 550 (10th Cir. 2020) (citations omitted). "In order to present a claim of denial of 'substantive' due process by a discharge for arbitrary or capricious reasons, a liberty or property interest must be present to which the protection of due process can attach." *Id.* at 552 (citing *Brenna v. S. Colo. State Coll.*, 589 F.2d 475, 476 (10th Cir. 1978)).

"In Wyoming, employment is presumed to be at-will*." Loghry v. Unicover Corp.*, 878 P.2d 510, 512 (Wyo. 1994) (citations omitted). When employment is at-will, the employer or employee may terminate the employment at any time, for any reason. *Kuhl v. Wells Fargo Bank, N.A.*, 2012 WY 85, ¶ 19, 281 P.3d 716, 723-24 (Wyo. 2012). In Wyoming, an at-will employee does not have a property interest in employment. *Sabatka v. Bd. of Trs. of Fremont Cnty. Pub. Libr. Sys.*, 2015 WY 8, ¶ 16, 341 P.3d 403, 407 (10th Cir. 2015).

The Complaint simply fails to assert facts identifying the independent source of an alleged property or liberty interest in employment. Davis pleads only conclusory allegations that he "possessed property interests in the form of his employment . . . [and] the protections of the written policies and procedures adopted and enacted by the City of Powell" and the police department, but does not specify the factual basis for his claim that a written policy or procedure created a property interest in his employment. (ECF No. 1 at ¶ 59; *see also* ¶ 67). Also, Davis contends he had a liberty interest "to be free from the arbitrary, deliberate, and willful disregard of" unspecified ordinances, policies, or procedures. (*Id.* at ¶ 59, *see also* ¶ 67). He generally references "Defendants' own . . . ordinances" but does not identify an ordinance that created a property or

liberty interest. (*Id.* at ¶¶ 59, 61-62, 68-69). Davis failed to plead facts sufficient to overcome the presumption of at-will employment and show he plausibly had a protected property or liberty interest in his employment.

Also, as to the procedural due process claim, Davis fails to asserts facts plausibly showing that he had a right to a hearing or other process. While Davis asserts he was not afforded an opportunity to be heard "as mandated by Defendants' own written policies, procedures and ordinances," he does not identify any specific policy, procedure, or ordinance establishing such a right. (ECF No. 1 at ¶ 68; *see also* ¶ 69).

Moreover, a public employee's termination may qualify as a substantive due process violation only when the termination is "conscience shocking." *Earles*, 825 F. App'x at 552 (citing *Koessel v. Sublette Cnty. Sheriff's Dep't*, 717 F.3d 736, 750 (10th Cir. 2013)). The termination of Davis's employment—after being employed for less than one year and being off work for more than three months due to his inability to perform the job—does not present the type of "conscience shocking" conduct that could support a substantive due process claim.

Finally, Davis's pleading refers to "Defendants" and fails to assert personal involvement by Eckerdt or McCaslin. *See Foote*, 118 F.3d at 1423.

### E.   Claims 7 and 11 fail to state plausible claims for negligence, gross negligence, or willful and wanton conduct.

In his state-law negligence claim (Claim 11), Davis contends Defendants "breached their duty of care" to him. (ECF No. 1 at 31). Davis labels Claim 7 as "Gross Negligence or Willful or Wanton Misconduct," which he appears to assert under state law. (*Id.* at 27-28). He contends "Defendants failed to train on, or even know, how to protect an employees' rights under Federal and State Laws concerning disability." (*Id.* at ¶ 75). Davis identifies the ADA as a federal law concerning disability, but does not identify a Wyoming state law. (*Id.* at 27-28). In Claims 7 and

11, Davis pleads Defendants were "grossly negligent in their duty to learn, know, and implement the law." (*Id*. at ¶¶ 78, 97). In Claims 7 and 11, Davis pleads that Defendants were "willful, wanton, and intentional in their wrongful actions in deadline with Officer Davis." (*Id*.).

In this employment case, grounded in an alleged "wrongful termination" (*Id*. at 8-10), Davis's claims based on negligence fail to state viable claims. The Tenth Circuit recognizes that "the majority of jurisdictions which have considered whether to impose liability for negligence in the context of employment terminations have declined to do so." *Vice v. Conoco, Inc*., 150 F.3d 1286, 1292 (10th Cir. 1998) (citing multiple cases). Consistent with decisions from jurisdictions around the nation, the Wyoming Supreme Court rejected a tort claim for "negligent investigation in employment relationships." *Wilder v. Cody Country Chamber of Com*., 868 P.2d 211, 222 (Wyo. 1994). The court reasoned that because the employment relationship "creates a contractual relationship," if a breach of that contract occurs, the remedy is a breach of contract action. *Id*. Given that the Wyoming Supreme Court continues to "'recognize a contract in every employment situation,'" *Hanft v. City of Laramie*, 485 P.3d 369, 382 (Wyo. 2021) (citations omitted), the Wyoming Supreme Court would probably reject the negligence claims Davis asserts. Moreover, "'Gross Negligence' is not a separate cause of action from ordinary negligence." *Vance v. Wyomed Lab'y, Inc*., 2016 WL 61, ¶ 15, 375 P.3d 746, 749 (Wyo. 2016) (citation omitted).

Also, to state a negligence claim, Davis's "factual allegations must establish the following elements: '(1) the defendant owed the plaintiff a duty to conform to a specified standard of care; (2) the defendant breached the duty of care; (3) the defendant's breach of the duty of care proximately caused injury to the plaintiff; and (4) the injury sustained by the plaintiff is compensable by money damages.'" *Angell v. Freedom Mortg. Corp*., Case No. 2:16-CV-0192-SWS, 2016 WL 9453335, at *5 (D. Wyo. Sept. 8, 2016) (quoting *Birt v. Wells Fargo Home Mortg.*,

*Inc.*, 75 P.3d 640, 658 (Wyo. 2003)). Here, Davis fails to assert a recognized duty of care under Wyoming law, and he asserts conclusory allegations about negligence. Davis contends Defendants were negligent because in his view, they failed to "learn, know, and implement" the ADA (ECF No. 1 at ¶¶ 75-76, 97), which effectively restates Claim 1, that Defendants violated the ADA.

Moreover, "[a]n allegation of willful and wanton misconduct can support a claim for punitive damages, but it also is not a separate cause of action." *Vance*, 2016 WY 61, ¶ 15, 375 P.3d at 749 (citation omitted). "Punitive damages 'are not appropriate in circumstances involving inattention, inadvertence, thoughtlessness, mistake, or even gross negligence.'" *Vroman v. Town & Country Credit Corp.*, 2007 WY 82, ¶ 28, 158 P.3d 141, 147 (Wyo. 2007) (citation omitted). "Willful and wanton misconduct involves 'some element of outrage, similar to that usually found in crime.'" *Dimick v. Hopkinson*, 2018 WY 82, ¶ 18, 422 P.3d 512, 520 (Wyo. 2018) (citation omitted). Here, Davis presents mere conclusory allegations regarding alleged willful and wanton misconduct, and asserts no facts supporting an element of outrage. (ECF No. 1 at ¶¶ 76-78). Because Claims 7 and 11 fail to assert plausible claims, they should be dismissed.

**F.     Claim 10 fails to state a plausible breach of the implied covenant of good faith and fair dealing claim for relief.**

In Claim 10, Davis intends to assert the state law tort claim for breach of the implied covenant of good faith and fair dealing against Eckerdt and McCaslin. The Wyoming Supreme Court recognizes that

> although a duty of good faith and fair dealing is created by law in all cases, it is only in ***rare and exceptional*** cases that the duty is of such a nature as to give rise to tort liability. The kind of breach of duty that brings into play the bad faith tort arises only when there are ***special relationships*** between the tort-victim and the tort-feasor.

*Kuhl*, 2012 WY 85, ¶ 35, 281 P.3d at 727 (emphasis in original). Moreover, "[t]he special relationship necessary to permit recovery is not established merely by the employer-employee

relationship. A showing is required that a special relationship of trust and reliance exists between the particular employee seeking recovery and the employer." *Id*. (citation omitted); *see also Finch v. Farmers Co-op. Oil Co. of Sheridan*, 2005 WY 41, ¶ 26, 109 P.3d 537, 544 (Wyo. 2005) (stating that for the tort, "A duty arises only where a special relationship of trust and reliance exists between the employer and the employee seeking recovery"). Because Eckerdt and McCaslin were supervisors rather than Davis's employer, Davis fails to state a plausible claim against them.

Moreover, based on the brief period of Davis's employment, he has failed to sufficiently plead facts showing a special relationship. *See Kuhl*, 2012 WY 85, ¶ 37, 281 P.3d at 728 ("We are aware . . . of no case in which such a special relationship has ripened over a period of mere months" (citation omitted)); *Garcia v. UniWyo Fed. Credit Union*, 920 P.2d 642, 646 (Wyo. 1996) (finding no special relationship when plaintiff was employed "just over six months").

## G.  Claim 12 fails to state a plausible intentional infliction of emotional distress claim.

In Claim 12, Davis intends to assert a state law tort claim for intentional infliction of emotional distress. To state a claim, Davis must assert facts showing extreme and outrageous conduct, meaning "conduct 'which goes beyond all possible bounds of decency, is regarded as atrocious, and is utterly intolerable in a civilized community.'" *Cook v. Shoshone First Bank*, 2006 WY 13, ¶ 18, 126 P.3d 886, 891 (Wyo. 2006) (citing *Leithead v. Am. Colloid Co*., 721 P.2d 1059, 1066 (Wyo. 1986)). He must also assert that Defendants "intentionally or recklessly caused the plaintiff to suffer severe emotional harm." *Terry v. Pioneer Press, Inc*., 947 P.2d 273, 278 (Wyo. 1997) (citation omitted).

Initially, a court determines "whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." *Cook*, 2006 WY 13, ¶ 18, 126 P.3d at 891 (citing *Leithead*, 721 P.2d at 1066). The Complaint falls short in plausibly asserting extreme and outrageous conduct. Davis admits that he worked over a 6-month period, then was afforded over

three months' leave time to recover from an illness, received workers' compensation benefits, and was "granted benefits" under the FMLA (even though he did not have a statutory entitlement) before his employment was terminated. (ECF No. 1 at ¶¶ 2, 22-27; ECF No. 1-1, at p. 2 ¶¶ (a), (c)). Davis contends the termination of his short-lived employment was extreme and outrageous because he was disabled, he was a veteran, he voluntarily moved a long distance to Powell, and Defendants' actions violated the ADA and were retaliatory under the First Amendment. (*Id*. at 32). Although he blames Defendants for his inability to obtain employment as a police officer in California, his conclusory allegation is not supported by any factual assertion about Eckerdt or McCaslin's conduct. (*Id*. at ¶¶ 4, 31, 100).

The Wyoming Supreme Court recognizes that "there are some wrongful discharge cases in which an action for intentional infliction of emotional distress cannot succeed." *Terry*, 947 P.2d at 278 (citation omitted). In *Terry*, for example, the plaintiff's employment was at-will, and "his contract permitted discharge for any reason or for no reason." *Id*. Because the plaintiff did not claim that the employer engaged in conduct "to publicly humiliate him or to prevent him from obtaining other employment," the employer had a complete defense. *Id*. Davis has not pleaded any facts to overcome the presumption that his employment was at-will, and he did not plead any facts that Eckerdt or McCaslin engaged in conduct to "publicly humiliate him" or impede future employment.

Although the Wyoming Supreme Court has not expressly decided the issue, courts in other states have recognized that the fact a plaintiff's employment was involuntarily terminated does not demonstrate outrageous conduct to support an intentional infliction of emotional distress claim. *See*, *e.g*., *Morales v. Law Firm of Michael W. McDivitt, P.C*., 641 F. Supp. 3d 1035, 1039-40 (D. Colo. 2022) (dismissing claim asserting plaintiff was terminated while on leave after giving birth

by caesarian section and enduring high-risk pregnancy, which failed to show outrageous conduct under Colorado law); *Cline v. Clinical Perfusion Sys.*, *Inc.*, 637 F. Supp. 3d 1255, 1271 (N.D. Okla. 2022) (dismissing claim asserting plaintiff was terminated after spending more than 5 weeks in an intensive care unit and being transferred to in-patient rehabilitation facility, because it failed to show extreme and outrageous conduct under Oklahoma law); *Crowe v. SRR Partners, LLC*, 632 F. Supp. 3d 1233, 1242 (D. Utah 2022) (dismissing claim asserting plaintiff was terminated while battling cancer because it failed to show outrageous conduct under Utah law); *see also Draughn v. St. Mary's Med. Ctr., Inc.*, Civil Action No. 3:23-0073, 2023 WL 6612518, at *3 (S.D. W. Va. Oct. 10, 2023) (dismissing claim because assertion that termination was based on plaintiff's disability insufficient to establish outrageous conduct under West Virginia law); *Adair v. Morton Cmty. Bank*, Case No. 2:22-cv-2053, 2023 WL 3612348, at *3 (C.D. Ill. May 5, 2023) (recommending dismissal of claim because pleaded facts that plaintiff was terminated after FMLA leave expired was an "ordinary employment dispute" and failed to show outrageous conduct under Illinois law), *report and recommendation adopted by* 2023 WL 3607262, at *1 (C.D. Ill. May 23, 2023). As pleaded, the circumstances surrounding Davis's termination are insufficient to show outrageous conduct.

Moreover, Davis fails to plead facts plausibly showing that Eckerdt or McCaslin "intentionally or recklessly caused the plaintiff to suffer severe emotional harm." *Terry*, 947 P.2d at 278.

## H.   Claim 13 fails to state a plausible claim for civil conspiracy.

In asserting a "civil conspiracy" claim, Davis states that Defendants "conspired . . . to terminate" him "in an unlawful violation of his federal rights under the [ADA]." (ECF No. 1 at ¶ 105). To plead a civil conspiracy claim under § 1983, Davis had to "'allege specific facts showing an agreement and concerted action amongst the defendants' because 'conclusory

allegations of conspiracy are insufficient to state a valid § 1983 claim.'" *Thompson v. Platt*, 815 F. App'x 227, 240 (10th Cir. 2020) (citation omitted). Davis's conclusory allegations about a conspiracy are insufficient. *Id*.; *see also Banks v. Opat*, 814 F. App'x 325, 337-38 (10th Cir. 2020). Moreover, Davis had to "'plead and prove not only a conspiracy, but also an actual deprivation of rights; pleading and proof of one without the other will be insufficient.'" *Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1231 (10th Cir. 2020) (citation omitted). "'[A] deprivation of a constitutional right is essential to proceed under a § 1983 conspiracy claim.'" *Kennedy v. Smith*, 259 F. App'x 150, 154 (10th Cir. 2007) (citation omitted). Davis failed to plead a deprivation of a constitutional right as part of his conspiracy claim. As discussed regarding Claims 1-2, he cannot rely on the ADA to support a § 1983 claim.

If Davis intends to assert a state-law conspiracy claim, he fails to state a plausible claim because "to bring a civil conspiracy claim, a plaintiff must state an underlying cause of action in tort." *Action Snowmobile & RV, Inc. v. Most Wanted Performance, LLC*, 423 P.3d 317, 324 (Wyo. 2018) (citation omitted). In Count 13, Davis failed to plead an underlying state law tort claim, and for the reasons discussed, he otherwise failed to plead a plausible state law tort claim against Eckerdt or McCaslin. Under federal or state law, Davis fails to state a plausible conspiracy claim.

I.      **For Claims 3, 5-6, and 13, Eckerdt and McCaslin are entitled to qualified immunity.**

"Government officials sued under 42 U.S.C. § 1983 are entitled to qualified immunity unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *Roberts v. Winder,* 16 F.4th 1367, 1373–74 (10th Cir. 2021) (internal quotation and citation omitted). This protection is designed to protect public employees "from the burdens of litigation arising from their exercise of discretion." *Cummings v. Dean,* 913 F.3d 1227, 1239 (10th Cir. 2019), *cert. denied sub nom. Cummings v. Bussey,* 140 S. Ct. 81 (2019) (citation and internal quotation marks omitted).

"A right is clearly established for qualified immunity purposes if every reasonable official would have understood that what he is doing violates that right." *Crane v. Utah Dep't of Corrs.,* 15 F.4th 1296, 1303 (10th Cir. 2021) (citations and internal quotation marks omitted). "For the law to be clearly established, there ordinarily must be a Supreme Court or Tenth Circuit opinion on point, or the clearly established weight of authority from other circuits must point in one direction." *Pompeo v. Bd. of Regents of the Univ. of N.M.,* 852 F.3d 973, 981 (10th Cir. 2017) (citation and internal quotation marks omitted).

In that regard, "courts may not define clearly established law **at a high level of generality**." *Crane,* 15 F.4th at 1303 (citation and internal quotation marks omitted) (emphasis added). Instead, the court "must ask whether the violative nature of <u>particular</u> conduct is clearly established." *Pompeo,* 852 F.3d at 981-82 (internal quotation and citation omitted) (emphasis in original). "With the right at issue so formulated, existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* at 982 (citation and internal quotation marks omitted).

Where, as here, a defendant moves to dismiss based on qualified immunity, "the court considers (1) whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct." *VDARE Found. v. City of Colo. Springs,* 11 F.4th 1151, 1175 (10th Cir. 2021), (internal quotation omitted). "Because it's the plaintiff's burden to satisfy this 'strict two-part test,' [a court] may grant qualified immunity if a plaintiff fails under either prong." *Id.*; *see also Montgomery v. Calvano*, No. 21-1134, 2022 WL 1132212, at *1 (10th Cir. Apr. 18, 2022) (applying qualified immunity standard to affirm Rule 12(b)(6) dismissal).

As discussed, the Complaint is insufficient to show that Eckerdt and McCaslin violated Davis's constitutional rights, and Eckerdt and McCaslin did not violate a clearly established right of Davis at the time of the events at issue. Consequently, they are entitled to qualified immunity.

**V.     CONCLUSION**

The Complaint does not state a plausible claim for relief against Defendants Eckerdt and McCaslin. Further, Eckerdt and McCaslin are entitled to qualified immunity. The Court should therefore dismiss with prejudice all claims Eckerdt and McCaslin, in their individual capacities.

DATED this 5th day of January, 2024.

*/s/Debra Hulett*
Debra Hulett, Bar No. 8-6904
Senior Assistant Attorney General
Prentice B. Olive, Bar No. 8-6691
Assistant Attorney General
Wyoming Attorney General's Office
109 State Capitol
Cheyenne, Wyoming 82002
(307) 777-7580
(307) 777-3608
(307) 777-8920 Facsimile
debra.hulett@wyo.gov
prentice.olive@wyo.gov

Attorneys for Roy Eckerdt and Matt McCaslin, in their individual capacities

## CERTIFICATE OF SERVICE

I do hereby certify that on this 5th day of January, 2024, a true and correct copy of the foregoing **Individual Defendants Eckerdt and McCaslin's Memorandum in Support of Motion to Dismiss** was served as indicated below:

Daniel Wilkerson                                   [✓] CM/ECF
Wilkerson Law Group
P.O. Box 607
Gillette, WY  82717-0607
infowy@wilkersonlawgroup.com

Attorney for Plaintiff

Thomas Thompson
Wyoming Local Government Liability Pool
6844 Yellowtail Road
Cheyenne, Wyoming 82009
tthompson@lglp.net

Attorney for Defendants City of Powell,
Wyoming, Roy Eckerdt, and Matt McCaslin,
in their official capacities, and Tiffany Brando
and Zack Thorington, both in their individual
and official capacities

_/s/Kailie D. Harris_____
Kailie D. Harris, Paralegal
Office of the Wyoming Attorney General