

## UNITED STATES DISTRICT COURT
## DISTRICT OF WYOMING

RYAN DAVIS,

     Plaintiff,

v.

POWELL WY ET AL.,

     Defendants.

Case No. 1:23-CV-230-SWS

---

## ORDER GRANTING IN PART AND DENYING IN PART CITY DEFENDANTS' MOTION TO DISMISS

---

This matter comes before the Court on the Motion to Dismiss (ECF No. 10) filed by Defendants City of Powell, Wyoming, Roy Eckerdt and Matt McCaslin in their official capacities, and Tiffany Brando and Zack Thorington in both their individual and official capacities (hereinafter "the City Defendants"). The City Defendants seeks to dismiss Plaintiff Ryan Davis' Complaint against them under Federal Rule of Civil Procedure 12(b)(6). The City Defendants filed a memorandum of law in support of their motion to dismiss (ECF No. 11), Plaintiff filed a response (ECF No. 14), and the City Defendants filed a reply (ECF No. 16). Having considered the parties' arguments, reviewed the record herein, and being otherwise fully advised, the Court finds that the requests for dismissal should be granted in part and denied in part.

### FACTUAL BACKGROUND

Plaintiff Ryan Davis relocated from California to Powell, Wyoming in December 2020 to work as a police officer for the City of Powell Police Department. (ECF No. 1 at 8.) Plaintiff

alleges that despite receiving praise for his service during his short time with the Powell Police Department, his time on the force was also fraught with challenges and conflict. According to the Complaint, during his time as an officer with the Powell Police Department, Plaintiff made several complaints and had repeated disagreements with his supervisors and other employees of the department regarding policies and procedures. (*See* ECF No. 1 at 12–20.) Among those, Plaintiff voiced objections and disagreement with: (1) the department's training on the use of less lethal weapons, (2) Plaintiff's supervisor's practice in conducting "security checks," (3) the department's policy on obtaining warrants to seize stolen firearms, (4) the lawfulness of breaking doors or windows to effectuate an arrest inside a building, (5) the department's use of the Computer Assisted Dispatch System ("CAD"), (6) Plaintiff's dissatisfaction with the department's field training officers, and (7) Plaintiff's refusal to tow a car in Powell which was impeding the work of the electrical company. (Id) Several of these disagreements involved Defendant Matt McCaslin, a Lieutenant in the Powell Police Department. (Id.)

On or about October 1, 2021, Plaintiff contracted COVID-19, which rendered him unable to "perform the normal job functions of a patrolling police officer" for October, November, and December 2021. (ECF No. 1 at 8.) During that time, Plaintiff alleges that he was "on Workers' Compensation and Family Medical Leave Act" and was "protected by the Americans with Disabilities Act (ADA)." (ECF No. 1 at 9.) On December 9, 2021, Plaintiff asserts that he was ultimately diagnosed with "Post COVID-19, Pneumonia, and Tachycardia." (ECF No. 1 at 9.) On January 7, 2022 Plaintiff contends that he was terminated from the Powell Police Department in a meeting with the Chief of Police Roy Eckerdt, Human Resources Manager Tiffany Brando, and City Administrator Zack Thorington. (ECF No. 1 at 9.) Plaintiff alleges that he was not given a reasonable explanation for his termination, and instead was told that his "illness was a hardship to

the department." (Id.) Plaintiff states that at no point did the Defendants "engage in an interactive process with [Plaintiff] involving accommodations as required by the Americans with Disabilities Act." (Id.) Plaintiff also alleges that his treatment and eventual termination was retaliatory because he "pointed out policy and training issues" and because he was "a pain to the police department administration." (Id. at 20.)

From the aforementioned allegations, Plaintiff asserts thirteen claims for relief: (1) Wrongful Termination in Violation of 42 U.S.C. 1983 and the ADA; (2) Retaliation under 42 U.S.C. § 1983 and the ADA; (3) Violation of the First Amendment under 42 U.S.C. § 1983; (4) Conspiracy to Interfere with Civil Rights under 42 U.S.C. § 1985; (5) Violation of Substantive Due Process under the Fourteenth Amendment; (6) Violation of Procedural Due Process under the Fourteenth Amendment; (7) Gross Negligence or Willful or Wanton Misconduct; (8) Breach of Contract; (9) Promissory Estoppel; (10) Breach of Implied Covenant of Good Faith and Fair Dealing; (11) Negligence; (12) Intentional Infliction of Emotional Distress; and (13) Civil Conspiracy. (ECF No. 1 at 21–33.) Plaintiff's claims are asserted against all Defendants listed in the Complaint, except that his claims for Breach of Contract (Eighth Claim for Relief) and Promissory Estoppel (Eighth Claim for Relief) are only asserted against the Defendant City of Powell, and his claim for Civil Conspiracy (Thirteenth Claim for Relief) is only against Defendants Roy Eckerdt, Matt McCaslin, Tiffany Brando and Zack Thorington.[1] (Id. at 28–29, 33.)

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows a party to seek dismissal based on the opposing party's "failure to state a claim upon which relief can be granted." "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial,

---

[1] Plaintiff does not specify whether the Civil Conspiracy Claim is asserted against these Defendants in their official or individual capacities, therefore, the Court assumes it is under both.

but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted). To overcome a Rule 12(b)(6) motion to dismiss, a complaint's factual allegations, assumed to be true, must "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Thus, mere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555). The Court accepts the nonmoving party's well-pled factual allegations as true and construes them in the light most favorable to the nonmoving party, but it is not bound to accept an asserted legal conclusion as true. *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

## DISCUSSION

### 1.  Plaintiff's Federal Law Claims

#### 1.1  Plaintiff's ADA Claims & § 1983 (First & Second Causes of Action)

Plaintiff's first and second claims for relief assert claims for wrongful termination and retaliation under the Americans with Disabilities Act against all Defendants through 42 U.S.C. § 1983. (ECF No. 1 at 21–22.) The City Defendants move to dismiss both claims, arguing that Title I of the ADA does not permit bringing a cause of action for violation of its provisions under § 1983. (ECF No. 11 at 12–13.)

"The Tenth Circuit is silent on whether a plaintiff may base a § 1983 claim upon alleged violations of the ADA[.]" *Watkins v. Jordan Sch. Dist.*, 2020 WL 2617928, at *4 (D. Utah May

22, 2020). However, because the ADA provides "a comprehensive remedial scheme", other circuits have repeatedly held that plaintiff may not bring a § 1983 claim to vindicate rights under Title II of the ADA. *Id.* (collecting cases and citing *Vinson v. Thomas*, 288 F.3d 1145, 1155 (9th Cir. 2002) (Congress imbued the ADA "with its own comprehensive remedial scheme"); *M.M.R.-Z. ex rel. Ramirez-Senda v. Puerto Rico*, 528 F.3d 9, 13 n.3 (1st Cir. 2008) ("Section 1983 cannot be used as a vehicle for ADA or other statutory claims that provide their own frameworks for damages."); *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1011 (8th Cir. 1999); *Tri-Corp Hous. Inc. v. Bauman*, 826 F.3d 446, 449 (7th Cir. 2016)). It is reasoned that "a comprehensive remedial scheme for the enforcement of a statutory right creates a presumption that Congress intended to foreclose resort to more general remedial schemes to vindicate that right." *Vinson*, 288 F.3d at 1155 (citing *Lollar v. Baker*, 196 F.3d 603, 609 (5th Cir.1999); *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n*, 453 U.S. 1, 20, 101 (1981)). Title II of the ADA "seeks to root out discrimination against the disabled in the provision of public services" while Title I authorizes disabled persons to bring employment discrimination claims. *Elwell v. Oklahoma ex rel. Bd. of Regents of Univ. of Oklahoma*, 693 F.3d 1303, 1305, 1313 (10th Cir. 2012) ("Congress has spoken and spoken clearly to the question of employment discrimination claims and placed them exclusively in Title I [of the ADA].").

Nevertheless, other courts have extended the prohibition of bringing an ADA claim under § 1983 to Title I of the ADA for public employees. For example, in *Okwu v. McKim*, 682 F.3d 841, 846 (9th Cir. 2012) the Ninth Circuit Court of Appeals affirmed that a public employee plaintiff could not "state a § 1983 claim predicated on violations of Title I of the ADA" because "[b]y drafting a comprehensive remedial scheme for employer's violations of ADA Title I, Congress manifested an intent to preclude § 1983 remedies." The Eleventh Circuit Court of

Appeals made a similar holding in *Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1531 (11th Cir. 1997), when it concluded "that a plaintiff may not maintain a section 1983 action in lieu of-or in addition to-a Rehabilitation Act or [Title I of the] ADA cause of action if the only alleged deprivation is of the employee's rights created by the Rehabilitation Act and the ADA." To allow "a plaintiff to sue both under the substantive statutes that set forth detailed administrative avenues of redress as well as section 1983 would be duplicative at best; in effect, such a holding would provide the plaintiff with two bites at precisely the same apple." *Id.*; *see also Lener v. Hempstead Pub. Sch.*, 55 F. Supp. 3d 267, 281 (E.D.N.Y. 2014) (dismissing "Section 1983 claims to the extent that they are based purely on rights secured by the ADA.")

The Court finds the reasoning of the above jurisprudence persuasive, and concludes that Plaintiff cannot bring a § 1983 against any Defendant in this case to vindicate his rights as a public employee under Title I of the ADA. In fact, Plaintiff agrees with the conclusion that his § 1983 claims are improperly based on the ADA, writing that he "will not bring the [ADA] actions under Section 42 U.S.C. § 1983[.]" (ECF No. 14 at 17.) Instead, Plaintiff states that he "is willing to amend his complaint after conferring with Defendants' counsel" to bring his claims under Title VII of the Civil Rights Act of 1964 and the ADA. (ECF No. 14 at 17.)

However, Plaintiff's argument is an improper attempt at a "drive-by" amendment of his Complaint. Since making the above representations, Plaintiff has not moved to amend his Complaint after conferring with opposing counsel.[2] In this District, "[a] valid request to amend a pleading must be presented to the Court by separate motion, not within a response brief, and it must include the proposed amended complaint and set forth the specific efforts taken to comply

---

[2] Plaintiff generally has 21 days to amend his Complaint as a matter of course "after service of a responsive pleading or 21 days after service of a motion under Rule 12(b)[.]" Fed. R. Civ. P. 15(a)(1)(B). However, as discussed above, Plaintiff never filed a separate motion to amend the complaint after the Defendants' motions to dismiss were filed.

with the duty to confer." *Garrett v. Wells Fargo Bank, N.A.*, 2024 WL 1011891, at *7 (D. Wyo. Feb. 7, 2024) (citing Local Rules 7.1(b), 15.1; Fed. R. Civ. P. 15(a)(2)). "[I]t is well-settled" in the Tenth Circuit, "that these drive-by requests to amend the complaint do not rise to the status of a motion." *Johnson v. Spencer*, 950 F.3d 680, 721 (10th Cir. 2020) (internal quotation omitted). This is because "a bare request to amend in response to a motion to dismiss is insufficient to place the court and opposing parties on notice of the plaintiff's request to amend and the particular grounds upon which such a request would be based." *Id.* (quoting *Albers v. Bd. of Cty. Comm'rs*, 771 F.3d 697, 706 (10th Cir. 2014)). Plaintiff's improper "drive-by" request to amend his Complaint is therefore denied, and Plaintiff's First and Second Causes of Action under § 1983, which seek to vindicate rights under the ADA, are dismissed in their entirety.

    1.2  <u>Plaintiff's First Amendment Claim (Third Cause of Action)</u>

      The City Defendants likewise seek dismissal of Plaintiff's claim asserted under the First Amendment to the United States Constitution, arguing that Plaintiff's speech regarding "training, policies, and procedures" was "speech pursuant to his official duties" which as a matter of law cannot give rise to First Amendment claim. (ECF No. 11 at 14–16.) Plaintiff does not oppose the City Defendants' motion to dismiss his First Amendment claim, offering no response to the City Defendants' arguments in his motion in opposition. Nevertheless, Plaintiff's First Amendment claim in his Complaint alleges "Free Speech Retaliation," asserting that Defendants retaliated against "Officer Davis' efforts to make suggestions and point out how training and policies were deficient in the Powell Police Department." (ECF No. 1 at 23.)

      "When a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom." *Garcetti v. Ceballos*, 547 U.S. 410, 419 (2006). Based on synthesis of the holdings of the Supreme Court's decisions *Garcetti v. Cebollos* and *Pickering v.*

*Bd. of Educ.*, 391 U.S. 563 (1968), the Tenth Circuit Court of Appeals recognizes a five-step test—the "*Garcetti/Pickering*" analysis—for when a public employee asserts a claim for freedom of speech retaliation. *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1202 (10th Cir. 2007). First, a "court must determine whether the employee speaks 'pursuant to his official duties'" *Id.* (quoting *Garcetti*, 547 U.S. at 421–22 (2006)). Second, "if an employee does not speak pursuant to his official duties, but instead speaks as a citizen, the court must determine whether the subject of the speech is a matter of public concern." *Id.* "Third, if the employee speaks as a citizen on a matter of public concern, the court must determine 'whether the employee's interest in commenting on the issue outweighs the interest of the state as employer.'" *Id.* at 1203. "Fourth, assuming the employee's interest outweighs that of the employer, the employee must show that his speech was a 'substantial factor or a motivating factor in a detrimental employment decision.'" *Id.* (quoting *Lybrook v. Members of Farmington Mun. Sch. Bd. of Educ.*, 232 F.3d 1334, 1338 (10th Cir. 2000)). Fifth and finally, if the employee succeeds in showing that his speech was a substantial motivating factor in the detrimental employment decision, the burden shifts so that 'the employer may demonstrate that it would have taken the same action against the employee even in the absence of the protected speech.'" *Id.* "The first three steps are to be resolved by the district court, while the last two are ordinarily for the trier of fact." *Id.* Here, Plaintiff's claim fails on the first two steps of the *Garcetti/Pickering* test.

First, based on the allegations of Plaintiff's Complaint, it is evident that all of Plaintiff's speech was made pursuant to his official duties. An employee whose speech is pursuant to his official duties is not entitled to "constitutional protection because the restriction on speech 'simply reflects the exercise of employer control over what the employer itself has commissioned or created.'" *Brammer-Hoelter*, 492 F.3d at 1202 (quoting *Garcetti*, 547 U.S. at 421–22 (2006)).

While the Supreme Court "declined to articulate a formula for determining when a government employee speaks pursuant to his official duties" in *Garcetti*, "cases interpreting *Garcetti* have made clear that speech relating to tasks within an employee's uncontested employment responsibilities is not protected from regulation." *Id.* at 1203. "An employee's official job description is not dispositive, however, because speech may be made pursuant to an employee's official duties even if it deals with activities that the employee is not expressly required to perform." *Id.* For example, the speech may not be protected even though it "concerns an unusual aspect of an employee's job that is not part of his everyday functions," but it may be protected even though the speech is "about the subject matter of an employee's work necessarily made pursuant to the employee's official duties." *Id.* at 1203–04.

Nevertheless, "speech is made pursuant to official duties if it is generally consistent with "the type of activities the employee was paid to do." *Id.* at 1203 (internal quotations omitted). "The ultimate question is whether the employee speaks as a citizen or instead as a government employee—an individual acting "in his or her professional capacity." *Id.* "Consequently, if an employee engages in speech during the course of performing an official duty and the speech reasonably contributes to or facilitates the employee's performance of the official duty, the speech is made pursuant to the employee's official duties." *Id.* In determining this issue, a court "must take a practical view of all the facts and circumstances surrounding the speech and the employment relationship." *Id.* at 1204.

In this case, it is evident that all the allegedly protected speech contained in the Complaint was made pursuant to Plaintiff's official duties and consistent with the type of activities he was paid to perform as a Powell police officer. While Plaintiff does not allege a list of his official duties, he asserts that he was hired by the Powell Police Department as a "Police Officer I role, on

December 11, 2020." (ECF No. 1 at 8.) Plaintiff alleges he suffered retaliation from the Powell Police Department because during the course of his employment, Plaintiff made "efforts to make suggestions and point out how training and policies were deficient in the Powell Police Department." (ECF No. 1 at 23.) Specifically, Plaintiff alleges that he voiced objections and disagreement with: (1) the department's training on the use of less lethal shotgun and flash-bang devices; (2) Plaintiff's supervisor's practice in conducting "security checks" by entering unlocked doors in the City of Powell; (3) the department's policy on obtaining warrants to seize stolen firearms; (4) the lawfulness of breaking doors or windows to effectuate an arrest inside a building; (5) the department's use of the dispatch system; (6) Plaintiff's dissatisfaction with the department's field training officers; and (7) Plaintiff's refusal to tow a car in Powell which was impeding the work of the local electrical company. (ECF No. 1 at 12–20.)

When analyzed with a practical view of all the facts and circumstances surrounding Plaintiff's speech at issue, Plaintiff only ever criticized and offered ways to improve internal training and policies at the Powell Police Department. *See Rogers v. Riggs*, 71 F.4th 1256, 1261–62 (10th Cir. 2023) (the court must consider content, context and form of speech in determining primary purpose of speech). Patrolling, making arrests, and recovering evidence are perfect examples of duties which in all practical senses are consistent with the type of activities a police officer such as Plaintiff would be expected and paid to perform as part of his official duties in serving the town of Powell, Wyoming. Likewise, interacting with dispatch personnel and responding to calls are also activities a police officer such as Plaintiff would be expected and paid to perform. Furthermore, the incident involving the car and the electrical company may have pertained to an unusual aspect of Plaintiff's job, but his disagreement was once again with an official policy that pertained to his patrol duties in Powell, Wyoming. In sum, Plaintiff's

complaints and criticisms only sought to contribute or facilitate better performance in Plaintiff's official duties as an officer. Such speech can only be categorized as being made in his professional capacity and pursuant to his official duties as a Powell Police Officer.

Additionally, the context of Plaintiff's speech shows that it was not speech of public concern under step two of the *Garcetti/Pickering* analysis—further supporting dismissal of his First Amendment claim. If a private citizen employee speaks regarding a matter not of public concern, "then the speech is unprotected and the [*Garcetti/Pickering*] inquiry ends." *Brammer-Hoelter*, 492 F.3d at 1203. "Matters of public concern are 'those of interest to the community, whether for social, political, or other reasons.'" *Id.* at 1205. For example, "[s]tatements revealing official impropriety usually involve matters of public concern" as opposed to speech which "merely deals with personal disputes and grievances unrelated to the public's interest." *Id.* "In deciding what is a matter of public concern" a court must consider the content, motive, form, and context of the plaintiff's statements, "as revealed by the whole record." *Id.* (internal quotation omitted). "Relevant factors include the time frame in which the speech occurred, the different audiences to which the speech may have been directed, the continuity of the speech, and the degree to which the different aspects of speech built upon each other to create a cumulative impact on the state employer." *Id.* (quotation omitted).

When examined in its totality, including context, content and form, Plaintiff's speech was not motivated to disclose any perceived misconduct by the Powell Police Department to the public. Some of Plaintiff's criticisms stem from Plaintiff's belief that improper training could be dangerous for the public and certain policies could lead to violations of the Constitution. (ECF No. 1 at 13–14; 19–20) ("You can absolutely kill someone with [a "less lethal" weapon if you are not trained properly"; "to tow the vehicle without probable cause to do so . . . would be an unlawful

seizure and a 4th Amendment violation.")) The public certainly has an interest in knowing about constitutional violations by the police and improper training of their local officers.

However, Plaintiff never attempted to voice his concerns to the broader public if he in fact believed that his speech was of great public concern. *See e.g., Kluth v. Spurlock*, 2023 WL 6198894, at *9 (D. Colo. Sept. 22, 2023) (where the law enforcement employee's speech was published on her Facebook page and viewable to the public and members of the sheriff's department.) According to the allegations of the Complaint, Plaintiff's criticisms were limited to members of the Powell Police Department, addressed only internal policies and training, and were never published or expressed publicly. As such, the content, form, context, and motivation of Plaintiff's speech, even taking all his allegations as true, indicate that his speech was not made as a matter of public concern under the second prong of the *Garcetti/Pickering* test. Because Plaintiff's speech fails the first two prongs of the *Garcetti/Pickering* test, Plaintiff's Third Claim for Relief alleging a First Amendment violation must be dismissed.

### 1.3  Plaintiff's 42 U.S.C. § 1985 Claim

The City Defendants next move to dismiss Plaintiff's claim for "civil conspiracy" under 42 U.S.C. § 1985, arguing that Plaintiff's allegations are conclusory, lack specificity, and that any for disability-based class is foreclosed as a matter of law. (ECF No. 11 at 16–18.) Plaintiff does not respond to the City Defendants argument that a disability-based class cannot give rise to a claim for civil conspiracy under § 1985. Instead, Plaintiff merely contends that "[f]rom the facts alleged in [Plaintiff's] complaint, there had to be, and was, conspiring and planning that took place prior to the January 7, 2022, meeting wherein [Plaintiff's] rights were violated by the Defendants." (ECF No. 14 at 21.)

Enacted by Congress in 1871, 42 U.S.C. § 1985(3) created a cause of action against "two

or more persons who conspire to deprive a plaintiff of equal protection or equal privileges or immunities." *Sullivan v. Hartford Fin. Servs. Grp., Inc.*, 2023 WL 4635888 at *3 (10th Cir. July 20, 2023) (citing *Kush v. Rutledge*, 460 U.S. 719, 725 n.8 (1983)); *Wilhelm v. Cont'l Title Co.*, 720 F.2d 1173, 1175 (10th Cir. 1983). "[A] plaintiff in an action under § 1985(3) must prove both a conspiracy and a group animus" to a group in which the plaintiff belongs. *Great Am. Fed. Sav. & Loan Ass'n*, 442 U.S. 366, 378 (1979) (holding that "deprivation of a right created by Title VII cannot be the basis for a cause of action under § 1985(3).")

Here, Plaintiff alleges that he belonged to a "protected class" of disabled persons, essentially alleging he was subject to a disability-based animus when Defendants conspired to deprive him of the privileges and immunities under the laws in violation of § 1985(3). (ECF No. 1 at 23–24.) However, the Tenth Circuit Court of Appeals has clearly and repeatedly held that "a class of 'handicapped persons' was not in the contemplation of Congress in 1871, and was not included as a class in what is now § 1985(3)." *Wilhelm*, 720 F.2d at 1177; *Sullivan*, 2023 WL 4635888 at *3 (citing and declining to overturn *Wilhelm*, 720 F.2d at 1173). Accordingly, an action alleging a conspiracy against Plaintiff based upon a disability-based animus is not actionable under § 1985(3), and Plaintiff's Fourth Claim for Relief under § 1985 must therefore be dismissed.

### 1.4 Plaintiff's Fourteenth Amendment Substantive and Procedural Due Process Claims (Fifth and Sixth Claims for Relief)

The Fourteenth amendment to the United States Constitution protects citizens from the deprivation of "life, liberty, or property, without due process of law. . . ." *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998) (citing U.S. Const. amend. XIV, § 1.) Fourteenth Amendment due process claims come in two varieties: Procedural due process claims and substantive due process claims. "Procedural due process ensures that a state will not deprive a person of life, liberty or property unless fair procedures are used in making that decision." *Id.*

"[S]ubstantive due process, on the other hand, guarantees that the state will not deprive a person of those rights for an arbitrary reason regardless of how fair the procedures are that are used in making the decision." *Id.* Plaintiff has brought claims for violation of both his substantive (Fifth Claim for Relief) and procedural due process rights (Sixth Claim for Relief). (ECF No. 1 at 24–27.) The City Defendants request the Court dismiss Plaintiff's claims alleging violations of his substantive and procedural due process rights on the basis that the allegations in the Complaint supporting these claims are conclusory and lack specificity. (ECF No. 11 at 18–20.)

    A. Procedural Due Process

To prevail on a claim for violation of procedural due process, a plaintiff bears the burden of demonstrating: "(1) a constitutionally cognizable liberty or property interest, (2) a deprivation of this interest, and (3) a lack of constitutionally adequate notice and a hearing." *Martin Marietta Materials, Inc. v. Kansas Dep't of Transp.*, 810 F.3d 1161, 1171 (10th Cir. 2016). Because "[t]he Fourteenth Amendment's procedural due process protections apply only to an individual deprived of a recognized property or liberty interest" a plaintiff must first "establish that he has a protected interest at stake." *Anglemyer v. Hamilton Cnty. Hosp.*, 58 F.3d 533, 536 (10th Cir. 1995); *Graham v. City of Oklahoma City, Okl.*, 859 F.2d 142, 145–46 (10th Cir. 1988).

Plaintiff's Complaint alleges that he possessed a liberty and property interest in his continued employment and tenure with the Powell Police Department. (ECF No. 1 at 26.) In opposing the motion to dismiss, he argues that his procedural due process claim was adequately alleged because (1) he pled facts showing an "implied contract in promise of continued employment" and (2) because the Americans with Disabilities Act requires an interactive process for providing reasonable accommodations at work which Plaintiff alleges was not followed. (ECF No. 14 at 18.) The Court concludes that Plaintiff has succeeded in alleging a property interest, but

not a liberty interest, in his continued employment with the Powell Police Department, and that he has adequately alleged that constitutionally adequate process was not observed.

       i.    <u>Property Interest</u>

"A public employee facing discharge is entitled to the safeguards of procedural due process only if he can demonstrate that the termination implicates a property or liberty interest protected by the Due Process Clause." *Graham*, 859 F.2d at 145–46. However, "if a property or liberty interest is not implicated," the plaintiff "must settle for whatever procedures are provided by statute or regulation." *Id.* at 146 (internal quotations omitted.) Generally, "Wyoming recognizes the at-will employment doctrine, which allows either an employee or an employer to end the employment relationship at any time for any reason or for no reason." *Worley v. Wyoming Bottling Co.*, 1 P.3d 615, 620 (Wyo. 2000). A plaintiff alleging a property interest in state employment requires a court to examine "whether, under state law, the employee has 'a legitimate claim of entitlement' in continued employment, as opposed to a 'unilateral expectation' or 'an abstract need or desire' for it." *Zwygart v. Bd. of Cnty. Comm'rs of Jefferson Cnty., Kan.*, 483 F.3d 1086, 1093 (10th Cir. 2007) (citing *The Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)); *Martin Marietta Materials, Inc.*, 810 F.3d at 1172–73 ("The plaintiff must have more than a unilateral expectation of [a property or liberty interest]. He must, instead, have a legitimate claim of entitlement to it.") (internal quotations omitted). Property interests in public employment "are created not by the Constitution itself, but may be defined by independent sources such as state statutes, regulations, municipal ordinances, university rules, and even express or implied contracts." *Anglemyer*, 58 F.3d at 536; *Mondt v. Cheyenne Police Dep't*, 924 P.2d 70, 74 (Wyo. 1996) (citing *Roth*, 408 U.S. 576–78) ("a person may have a protected property interest in public employment if contractual or statutory provisions guarantee continued employment absent

'sufficient cause' for discharge.")

Plaintiff's Complaint alleges he engaged in "communications and negotiations" with the City of Powell Police Department before becoming employed, and that he was protected by the City of Powell's "own written policies, procedures, and ordinances, which require Defendants to provide Officer Davis with, at the very least, an opportunity for a hearing to present defenses to the allegations against him prior to terminating him from his employment[.]" (ECF No. 1 at 8, 26–27.) Plaintiff also argues his communications with the City of Powell before his employment and the city's "own policies and procedures . . . evidence a contract for employment between the parties." (ECF No. 14 at 18.) Plaintiff also states in his brief that he believes that an "Employment Manual" of which Plaintiff will request a copy in discovery, will further evidence a contract eliminating Plaintiff's "at-will" employment status. (Id.)

Based on Plaintiff's brief, it is evident that Plaintiff does not know whether the contents of the employee manual provide any protections to Plaintiff, nor does Plaintiff adequately identify with specificity which other policies, procedures, or city ordinances created for Plaintiff a property interest in continued employment with the Powell Police Department. Nevertheless, under Tenth Circuit precedent, "if state statutes or regulations place substantive restrictions on a government actor's ability to make personnel decisions, then the employee has a property interest protected by the procedural due process clause." *Potts v. Davis Cnty.*, 551 F.3d 1188, 1192 (10th Cir. 2009). The Wyoming Supreme Court has recognized the existence of a property interest in continued employment for law enforcement officers pursuant to under the Wyoming Civil Service Statute, Wyo. Stat. Ann. § 15-5-112. *Mondt*, 924 P.2d at 72.

Wyoming's Civil Service Statute, Wyo. Stat. Ann. § 15-5-112 provides:

(b) Discharge from a department, or reduction in grade or compensation, or both, may be made for any cause, not political or religious, which will promote the

efficiency of the service, on written notice and specifications filed with the [civil service] commission and served upon the person affected by the authority requesting the discharge or reduction. The person whose discharge or reduction is sought is allowed a reasonable time to answer the charges in writing and demand a hearing. The commission, after hearing or investigation, shall determine whether the reason for discharge or reduction is sufficient and established.

Wyo. Stat. Ann. § 15-5-112(b)[3]. For police officers, the statute further specifies:

(ii) A chief of police or his acting chief may discharge or reduce in grade any employee if he considers that the good of the service will be served thereby. Any employee who is discharged or reduced in grade has the right to answer in writing the statement of the chief as to the cause for his discharge or reduction in grade, as the case may be, and to file this and any other affidavits and exhibits in support of his statement with the commission.

Wyo. Stat. Ann. § 15-5-112(c)(ii).[4]

In *Mondt v. Cheyenne Police Department*, the Wyoming Supreme Court ruled that the standards contained in Wyo. Stat. Ann. § 15-5-112(c) "are the equivalent of a 'for cause' standard, limit the public employer's exercise of discretion, and are sufficient foundations upon which to base a property interest in continued employment." Therefore, the court held that the plaintiff in that case had "a protected property interest in continued employment as a non-probationary police officer." *Id.*

Plaintiff's Complaint alleges with the requisite plausibility that he was employed as a police officer for the Powell Police Department. It also alleges that when Plaintiff was being

---

[3] Wyo. Stat. Ann. § 15-5-102 mandates the establishment of "a fire department civil service commission in each incorporated municipality maintaining a paid fire department and having a population of four thousand (4,000) or more" but that "[t]he governing body in each incorporated municipality maintaining a paid police department and having a population of four thousand (4,000) or more which has not established a civil service commission may establish a police department personnel system in a manner as the governing body determines." Wyo. Stat. Ann. § 15-5-102(a)–(b). Because neither party raises or discusses the Wyoming Civil Service Statute for police officers, it is not clear to the Court whether the City of Powell has a civil service commission or a police department personnel system.

[4] Although the statute refers to a civil service commission, the statute provides that the discharge of a police officer does not require "consent of the commission after a hearing." Wyo. Stat. Ann. § 15-5-112(b) ("Except as otherwise provided in subsection (c) of this section . . ."); *see Mondt*, 924 P.2d at 78 (". . . since 112(b) expressly excepts police officers from its procedural protection of a commission hearing . . .).

recruited to come to Powell, he was promised "a probationary process and review process wherein Officer Davis was told that he would be guaranteed employment with satisfactory marks[.]" (ECF No. 1 at 28, ¶ 81.) It is not evident from the contents of the Complaint whether Plaintiff was still subject to the probationary period at the time of his discharge, or whether Plaintiff had become a non-probationary police officer by that time. However, construing Plaintiff's Complaint in the light most favorable to him, the Court determines that Plaintiff's alleged status as a police officer with the Powell Police Department plausibly states a claim that he was entitled to "for cause" protections—entitling him to a property interest in continued employment under the Wyoming Civil Service Statute, Wyo. Stat. Ann. § 15-5-112. Additionally, as will be discussed in further detail below, Plaintiff has adequately stated a claim for an implied-in-fact employment contract under Wyoming law, another basis by which he has plausibly alleged a property interest in his continued public employment. *Anglemyer*, 58 F.3d at 536. Plaintiff's Complaint therefore adequately states a claim for a property interest necessary as the first element in a procedural due process claim.[5]

---

[5] It is worthy of note that Plaintiff's assertion of a procedural due process right in continued employment based on the ADA's interactive process is misplaced. Several courts have rejected a plaintiff's attempt to "bootstrap" a Title II ADA violation "into a federal due process violation." *See e.g. Bartlett v. New York State Bd. of L. Examiners*, 970 F. Supp. 1094, 1142 (S.D.N.Y. 1997), *aff'd in part, vacated and remanded in part on other grounds*, 226 F.3d 69 (2d Cir. 2000) ("Even if defendants arbitrarily and capriciously denied Dr. Bartlett the accommodations to which federal law entitled her, I cannot find that this rises to the level of either a substantive or procedural due process violation."); *Kelly v. W. Virginia Bd. of L. Examiners*, 2010 WL 9921505, at *13 n. 7 (S.D.W. Va. Apr. 16, 2010), *aff'd*, 418 F. App'x 203 (4th Cir. 2011); *Stamm v. New York City Transit Auth.*, 2006 WL 1027142, at *9 (E.D.N.Y. Feb. 7, 2006) ("[T]he fact that a reasonable accommodation for a person with a disability is required by the ADA . . . does not imply that the disabled person has a property right in that accommodation.").

In Wyoming, "[p]roperty interests in continued public employment are created and defined by independent sources such as state statutory law, regulations or the terms of employment." *Hesse v. Town of Jackson, Wyo.*, 541 F.3d 1240 (10th Cir. 2008). The ADA interactive process is not an independent source of a procedural due process right. Indeed, even under Title I of the ADA, the Tenth Circuit's "case law is clear that an employee cannot maintain a failure to accommodate claim based solely on an employer's failure to engage in the interactive process." *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1207 (10th Cir. 2018).

The Court therefore holds that the mere existence of the ADA's Title I interactive process is not an independent source which grants a disabled employee a liberty or property interest in continued employment, transforming "at-will" employment into "for-cause" employment for all disabled persons. The protections of the ADA and "at-will" employment are not mutually exclusive. A disabled employee may simultaneously be "at-will" while also being entitled to ADA protections. The reverse is also true: a disabled employee with for-cause protections may also enjoy

ii.     Liberty Interest

Despite the foregoing, Plaintiff has not stated a claim for a deprivation of a liberty interest. For purposes of deprivation of a liberty interest under the Fourteenth Amendment, "the meaning of 'liberty' must be broad indeed." *Roth*, 408 U.S. at 572. According to the Supreme Court, "[w]ithout doubt" liberty,

> denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men.

*Id.* (internal citations omitted.) Courts have recognized that a liberty interest may therefore be abridged when a state employer makes "charges of dishonesty or immorality or imposed 'a stigma or other disability that foreclosed an employee's freedom to take advantage of other employment opportunities.'" *Renaud v. Wyoming Dep't of Fam. Servs.*, 203 F.3d 723, 726 (10th Cir. 2000) (quoting *Roth*, 408 U.S. at 573.) For example, defamation occurring "in the course of termination of employment" of a state employee, may be enough to establish a claim for deprivation of a liberty interest. *Id.* (internal citations omitted).

The Tenth Circuit Court of Appeals has accordingly set forth a four-part test to demonstrate a deprivation of liberty in employment:

> First, to be actionable, the statements must impugn the good name, reputation, honor, or integrity of the employee. Second, the statements must be false. Third, the statements must occur in the course of terminating the employee or must foreclose other employment opportunities. And fourth, the statements must be published.

---

the protections of the ADA. To allow the interactive process to independently form the basis of a procedural due process claim would invalidate the ADA's comprehensive remedial scheme, and the "presumption that Congress intended to foreclose resort to more general remedial schemes to vindicate that right." *Vinson*, 288 F.3d at 1155 (citing *Lollar*, 196 F.3d at 609; *Middlesex County Sewerage Auth.*, 453 U.S. at 20, 101).

*Id.* at 727; *Bishop v. Wood*, 426 U.S. 341, 348 (1976) (alleged stigmatizing communications were "not made public" and therefore could not form the basis of a liberty deprivation.)

Plaintiff's Complaint alleges two liberty interest deprivations: (1) Plaintiff's "liberty interest in the form of his right to be free from the arbitrary, deliberate, and willful disregard of such written ordinances, policies, and procedures by Defendants" and (2) allegations that as a result of his "wrongful termination . . . . [Plaintiff] cannot now obtain a law enforcement job in California" and "has been informed that he is essentially not hirable as . . . a law enforcement employee directly due to his wrongful termination by the City of Powell." (ECF No. 1 at 10, 25.) Plaintiff's first "liberty interest" is identical to his asserted property interest in continued employment, and so will be adequately represented by that claim. However, Plaintiff's allegations regarding his inability to obtain work as a law enforcement officer due to his termination lacks factual allegations sufficient to state a claim for deprivation of a liberty interest.

Plaintiff fails to allege any facts which would create a plausible link between his alleged wrongful termination and his inability to be employed as a law enforcement officer in California. First, although Plaintiff alleges that his good name was impugned when he was "labeled disloyal, unprofessional, and a burden" at the meeting in which he was terminated on January 7, 2022, Plaintiff does not allege how or who made such "labels" of Plaintiff. (ECF No. 1 at 9.) Furthermore, Plaintiff does not allege that such "labels" were ever published or made public, and it is neither apparent nor detailed in the complaint how any of these alleged statements would have been made known to any hiring authorities in California. *See Clevenger v. Town of Guernsey*, 2021 WL 2946506 at *7 (D. Wyo. Apr. 16, 2021) (statement is published if it is made public and intra-government dissemination by itself does not satisfy publication requirement). Nor does Plaintiff even allege that the "labels" themselves are the reason why he cannot be hired in California. If

Plaintiff only means to allege that the mere fact that he was terminated in Powell has prevented his employment in California, such a fact standing alone is not adequate to support a claim for deprivation of a liberty interest. Plaintiff has not therefore made a plausible claim for deprivation of a liberty interest.

      iii.    <u>Adequate Process</u>

Finally, Plaintiff has adequately alleged the second element of a procedural due process claim—that a constitutionally adequate process was not observed in his termination. The Tenth Circuit has held that "failure to comply with state or local procedural requirements does not necessarily constitute a denial of due process; the alleged violation must result in a procedure which itself falls short of standards derived from the Due Process Clause." *Hennigh*, 155 F.3d at 1255–56; *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) ("minimum procedural requirements are a matter of federal law, they are not diminished by the fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action.") For Wyoming law enforcement officers, "once it is determined that a state statute confers a property interest in continued public employment and the Due Process Clause applies" the required minimum process "is found, not in the Wyoming civil service statutes, but in federal constitutional law." *Mondt v. Cheyenne Police Dep't*, 924 P.2d 70, 75 (Wyo. 1996).

Therefore, Plaintiff's allegation that the Powell Police Department did not comply with the requirements contained in the Wyoming Civil Service Statute, Wyo. Stat. Ann. § 15-5-112, does not mean that the amount of process afforded Plaintiff failed to meet "the constitutional standard for a pre-termination hearing." *Hennigh*, 155 F.3d at 1256. For example, in *Hennigh v. City of Shawnee*, the Tenth Circuit examined the due process provided to a police lieutenant protected by a collective bargaining agreement negotiated by the International Union of Police Associations.

*Id.* at 1251. There, the Court found that even though the process provided to the police lieutenant did not strictly comply with the requirement of the collective bargaining agreement, the plaintiff's "hearing before the Review Board and the other opportunities provided to this [p]laintiff, at which he was allowed to participate and was represented by counsel, met the constitutional standard for a pre-termination hearing." *Id.* at 1256. The Court also noted that the plaintiff had been provided adequate post-termination process in the form of the agreement's grievance procedure. *Id.*; *see also Archuleta v. Colorado Dep't of Institutions, Div. of Youth Servs.*, 936 F.2d 483, 490 (10th Cir. 1991) (adequate process found where the plaintiff was given notice and an explanation of disciplinary charges, a pre-termination hearing where she presented her side of the story, and an extensive post-termination hearing.).

Here, Plaintiff's allegations indicate that he was not given the opportunity to answer in writing the statement of the Police Chief as to the cause for his discharge under the minimum process outlined in Wyoming's Civil Service Statute, Wyo. Stat. Ann. § 15-5-112(c)(ii). More importantly, however, Plaintiff's Complaint also alleges that he was provided no pre-termination process at all and "no opportunity to be heard whatsoever." (ECF No. 1 at 26.) According to the Complaint, Plaintiff was called to a meeting on January 7, 2022 and was terminated during the meeting. (Id. at 9.) He asserts during the meeting he was not given a "reasonable explanation" and was only told that his "illness was a hardship to the department" and that he was "a financial hardship to the budget." (Id.) Based on these allegations, Plaintiff plausibly alleges that he was not given notice or an explanation of the reasons for his termination before showing up for the meeting on January 7, 2022—nor was he given an opportunity during the meeting to participate, be heard, or oppose the reasons for his termination. Plaintiff's allegations, assumed to be true, also indicate that he was not afforded the opportunity to be represented by counsel during the meeting or given

the benefit of any subsequent post-termination process. Therefore, the Court concludes that Plaintiff has plausibly alleged a procedural due process violation, because he alleged (1) a cognizable liberty or property interest in his continued employment with the Powell Police Department, (2) that he was deprived of this interest when he was fired, and (3) that he received a constitutionally inadequate notice and hearing.

B. Substantive Due Process

Turning to Plaintiff's substantive due process claim, the Complaint contends that Plaintiff had the same property and liberty interests which form the basis of his procedural due process claim. (ECF No. 1 at 25.) However, although Plaintiff may have stated a procedural due process claim based on his property interest in continued employment under the Wyoming Civil Service Act, his employment does not automatically enjoy substantive due process protections under the U.S. Constitution.

Unlike procedural due process claims, "[s]ubstantive due process claims are not based on state law but are founded upon 'deeply rooted notions of fundamental personal interests derived from the Constitution.'" *Hennigh*, 155 F.3d at 1256 (quoting *Mangels v. Pena*, 789 F.2d 836, 838 (10th Cir.1986)); *Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 229 (1985) (J. Powell Concurrence) ("While property interests are protected by procedural due process even though the interest is derived from state law rather than the Constitution, . . . substantive due process rights are created only by the Constitution."). Therefore, even when an employee has a property interest in continued employment under state law, "the Tenth Circuit has expressed uncertainty as to whether the interest should be entitled to substantive due process protection, rather than a right of procedural due process." *Earles v. Cleveland*, 418 F. Supp. 3d 879 (W.D. Okla. 2019), *aff'd*, 825 F. App'x 544 (10th Cir. 2020) (citing *Hennigh*, 155 F.3d at 1256, 1227). Tenth Circuit precedent

"does not clearly delineate what specific property interests in employment are fundamental, and thus protected by the doctrine of substantive due process[.]" *Hennigh*, 155 F.3d at 1227.[6]

Plaintiff argues in a conclusory manner "a reasonable person can easily infer that the termination of Officer Davis [was] 'conscience shocking' and a substantive due process violation." (ECF No. 14 at 18–19.) However, "'[s]ubstantive' due process requires only that termination of a protected interest not be arbitrary, capricious, or without a rational basis." *Hennigh*, 155 F.3d at 1256, 1227 (quoting *Brenna v. Southern Colo. State College*, 589 F.2d 475, 477 (10th Cir.1978)). Furthermore, "[t]he 'ultimate' standard for determining whether there has been a substantive due process violation is whether the challenged government action shocks the conscience of <u>federal judges</u>." *Graves v. Thomas*, 450 F.3d 1215, 1221 (10th Cir. 2006) (quotations omitted, emphasis added). Even assuming arguendo that Plaintiff had a fundamental property interest in his continued employment with the Powell Police Department, the Court concludes that Plaintiff's termination was not arbitrary or without a rational basis.

Here, Plaintiff's Complaint alleges that as of January 7, 2022, he had been "unable to perform the normal job functions of a patrolling officer" for the preceding three months due to his contraction of COVID-19 and subsequent diagnosis of "Long COVID-19." (ECF No. 1 at 9.) During the short meeting on January 7, 2022, however, Plaintiff was given *a reason* for his termination, even if that reason was not given through the adequate process. Plaintiff alleges, and the Court assumes as true for purposes of the motion to dismiss, that he was told that his "illness was a hardship to the department" and that he was "a financial hardship to the budget." (ECF No. 1 at 9.) While those explanations may have been calloused, inconsiderate, and might even

---

[6] Neither Plaintiff nor Defendants raise this, and therefore, they fail to further illuminate the question of whether Plaintiff's public employment constitutes a fundamental right under the Constitution. Likewise, the Court declines to affirmatively hold that Plaintiff has a fundamental right in his public employment based on the allegations of his Complaint, not least because such a holding would effectively end "at-will" employment for all public employees.

constitute a procedural due process violation, they were not arbitrary or irrational reasons. It is easy to see how a patrol officer who is unable to work in his normal duties for three months might be a financial burden to the budget of a small-town police department. While undoubtedly unfortunate, the reasons given to Plaintiff for his termination as alleged in the Complaint were not arbitrary, irrational, or shocking to the conscience of the Court, and therefore, Plaintiff fails to state a claim for a substantive due process violation.

## 2. Plaintiff's State Law Tort Claims

### 2.1 Immunity from Tort Liability under the Wyoming Governmental Claims Act

Turning to the City Defendants' 12(b)(6) motion to dismiss Plaintiff's Wyoming state law claims, Plaintiff's Complaint asserts tort claims for Gross Negligence or Willful or Wanton Misconduct (Seventh Claim for Relief), Breach of the Implied Covenant of Good Faith and Fair Dealing (Tenth Claim for Relief), Negligence (Eleventh Claim for Relief), and Intentional Infliction of Emotional Distress (Twelfth Claim for Relief). (ECF No. 1 at 27–28, 31–33.) The City Defendants argue that any claims for tort against them must be dismissed because they have not waived their immunity to suit under the Wyoming Governmental Claims Act ("WGCA"). (ECF No. 11 at 7–8.) Plaintiff offers no response to the City Defendants' arguments based on immunity under the WGCA. (*See* ECF No. 14.)

"The WGCA grants immunity against tort claims to the State, all local entities, and their officials and employees acting within the scope of their duties, unless that immunity has been expressly waived." *Beus v. Uinta Cnty. Bd. of Cnty. Comm'rs*, 143 F. App'x 945, 949 (10th Cir. 2005).[7] The WGCA also contains statutory exceptions to sovereign immunity, and provides "[a]

---

[7]The WGCA's provisions protects "governmental entities," including "[l]ocal government" defined as "**cities and towns, counties, school districts**," as well as "[p]ublic employee[s.]" Wyo. Stat. Ann. § 1–39-103(a)(ii), (iv) (emphasis added). Therefore, the WGCA's sovereign immunity provisions apply to all Defendants in this case as all are either a city (City of Powell) or public employees (Roy Eckerdt, Matt McCaslin, Tiffany Brando, and Zack

governmental entity and its public employees while acting within the scope of duties are granted immunity from liability for any tort except as provided by W.S. 1–39–105 through 1–39–112 and limited by W.S. 1–39–121." Wyo. Stat. Ann. § 1–39–104(a).

> The enumerated exceptions to sovereign immunity permit actions premised on negligent operation of certain governmental vehicles, § 1–39–105; negligent operation or maintenance of certain governmental facilities, § 1–39–106; negligent operation of airports, § 1–39–107; negligent operation of public utilities and services, § 1–39–108; negligent operation of public hospitals, § 1–39–109; negligent performance of health care providers employed by governmental entities, § 1–39–110; and tortious acts of peace officers, § 1–39–112.

*Hoff v. City of Casper-Natrona Cnty. Health Dep't*, 33 P.3d 99, 105 (Wyo. 2001). Therefore, "sovereign immunity bars recovery unless the tort is one of those enumerated exceptions in the [WGCA] or the [public employee] acted outside the scope of their duties." *Id.*

Nonetheless, the WGCA's waiver of immunity must be express, and "[a] tort claim not specifically authorized under the Act is barred." *Id.* The Wyoming Supreme Court has made clear on more than one occasion that "[t]he decision whether or not to waive immunity for a governmental entity belongs to the Wyoming Legislature, not this Court." *Campbell Cnty. Mem'l Hosp. v. Pfeifle*, 317 P.3d 573, 580 (Wyo. 2014). As such, "with specific regard to the Wyoming Governmental Claims Act, . . . [the Wyoming Supreme Court] should not 'enlarge, stretch, expand[,] or extend' the statutory language to include 'matters not falling within its express provisions.'" *Id.* (quoting *Sinclair v. City of Gillette*, 270 P.3d 644, 646 (Wyo.2012)); *Hoff*, 33 P.3d at 107 ("[t]he [Wyoming] legislature has clearly stated . . . that a covered governmental entity is liable for only those torts expressly recognized in" the WGCA.)

For example, in *Hoff v. City of Casper-Natrona County Health Department*, the Wyoming Supreme Court addressed the question of whether a terminated public employee's "tort claims of

Thorington).

breach of the implied covenant of good faith and fair dealing and retaliatory termination in violation of public policy" were blocked by the "immunity bar of the Wyoming Governmental Claims Act[.]" In *Hoff*, the court found that "[t]he torts of retaliatory termination in violation of public policy and breach of the implied good faith covenant are not specifically enumerated in the" WGCA. *Id.* Specifically, the Court noted that the WGCA's provision regarding employer-employee relationships, Wyo. Stat. Ann. § 1–39–119, "does not enumerate these two subject torts and cannot serve as an exception to immunity." Id. at 107.[8] Therefore, because the Wyoming legislature "has not moved to add these torts to the list of statutorily enumerated exceptions to immunity" the Court ruled that the plaintiff's claims were blocked by sovereign immunity, and "[a]ny invitation to add a particular tort to the statutory list" must be taken-up with the legislature. *Id.* at 106–07.

### 2.2 Breach of the Implied Covenant of Good Faith and Fair Dealing

The Wyoming Supreme Court's decision in *Hoff* alone clearly forecloses the Plaintiff's Tenth Claim for Relief in this case—"Breach of the Implied Covenant of Good Faith and Fair Dealing." (ECF No. 1.) Because no such tort is expressly recognized as a statutory exception to sovereign immunity under the WGCA, Plaintiff's Tenth Claim for Relief must be dismissed as to the City of Powell and all the named Defendants in their official capacities. *Hoff*, 33 P.3d at 106; *Metz v. Laramie Cnty. Sch. Dist. No. 1*, 2007 WY 166, 173 P.3d 334 (Wyo. 2007) ("Therefore, because breach of good faith and fair dealing is not enumerated in one of the WGCA's specific exceptions [Laramie County School District] has immunity from the Plaintiffs' claim."); *see also*

---

[8] Wyo. Stat. Ann. § 1-39-119 provides that "[t]he provisions of this act [the WGCA] shall not affect any provision of law, regulation or agreement governing employer-employee relationships." The court in *Hoff* explained that Wyo. Stat. Ann. § 1-39-119 "does not serve to except claims which have their genesis in tort even though they arise out of an employment relationship", but that the WGCA's provisions are "supplementary to others that may be provided by law, regulation or other agreement relating to employer-employee relationships." *Id.* (citing *Bd. of Trustees of Univ. of Wyoming v. Bell*, 662 P.2d 410, 414–15 (Wyo.1983)). Therefore, for any tort action brought out of the employment relationship, the court specified that the claims procedure of the WGCA must be followed. *Id.* at 106.

*Adelman v. Wyoming Department of Family Services*, 2015 WL 11108639 at *9 (D. Wyo. Oct. 30, 2015) (implied covenant of good faith and fair dealing barred under WGCA).

### 2.3 Intentional Infliction of Emotional Distress

The express limitations of the WGCA likewise foreclose Plaintiff's remaining claims sounding in tort against the City Defendants.[9] With regard to a tort claim for intentional infliction of emotional distress, both the Tenth Circuit and Wyoming Supreme Court recognize that "there is nothing in any section of the WGCA . . . which would serve to abrogate sovereign immunity" for a claim for intentional infliction of emotional distress. *Brockman v. Wyoming Dep't of Fam. Servs.*, 342 F.3d 1159, 1169 (10th Cir. 2003) (citing *Routh v. State, ex rel. Wyoming Workers' Comp. Div.*, 952 P.2d 1108, 1116 (Wyo. 1998)). Sovereign immunity therefore also bars Plaintiff's claim for intentional infliction of emotional distress against all Defendants in their official capacities.

### 2.4 Negligence

Plaintiff also alleges that "[a]ll Defendants have either been willful, wanton, and intentional in their wrongful action in dealing with Officer Davis; or have been grossly negligent in their duty to learn, know, and implement the law, and safeguards, in protecting the rights of Officer Davis." (ECF No. 1 at 31, ¶ 97.) Although Wyo. Stat. § 1-39-112, provides that "[a] governmental entity is liable for damages resulting from tortious conduct of peace officers while acting within the scope of their duties", this Court is unwilling to read-in an express abrogation of sovereign immunity for actions taken by peace officers pursuant to their official duties in the employment context. *Hoff*, 33 P.3d at 105 ("[a]ny invitation to add a particular tort to the statutory list must be addressed to" the Wyoming State Legislature.)

---

[9] The claims as asserted against Defendants Roy Eckerdt, Matt McCaslin, Tiffany Brando, and Zack Thorington in their personal or individual capacities shall be addressed in a different opinion and order.

Indeed, the Wyoming Supreme Court has generally rejected attempts to recognize a cause of action for negligence involving employment termination. In *Wilder v. Cody Country Chamber of Com.*, 868 P.2d 211, 214–15, 222 (Wyo. 1994), a plaintiff sued after he was fired by the Cody Chamber of Commerce, alleging that Chamber officials acted negligently in terminating his employment when they failed "to properly investigate the financial problems at the Chamber" for which Plaintiff was allegedly responsible. However, the Wyoming Supreme Court wrote:

> We are persuaded that no tort cause of action exists for negligent investigation in employment relationships. As we have previously stated, employment creates a contractual relationship. If that contract is breached, relief lies with an action for breach of contract. To the extent an employee has an employment contract requiring specific reasons for dismissal, then the employer must conduct an adequate investigation or be liable for breach of that contract.

*Wilder*, 868 P.2d at 222 (quotation omitted). Likewise, in *Alcorn v. Labarge*, *WY*, 2018 WL 11252706, at *5 n. 2 (D. Wyo. Aug. 17, 2018), this Court declined to recognize an additional tort claim in the employment termination context for a lawsuit made against a city police department, despite the WGCA's abrogation of sovereign immunity for peace officers in Wyo. Stat. § 1-39-112. ("It does not appear[] that plaintiff's allegations against the defendants raise any common tort questions, such as those that might arise in a negligence action. This case, and the claims derived from the underlying facts, is about whether plaintiff had a contract of employment or whether she was an at-will employee.")

Plaintiff has not provided this Court with any reason to believe that the Wyoming Supreme Court would be any more willing to recognize a tort for negligent termination in this case, merely because Plaintiff alleges that Defendants failed "to learn, know, and implement the law." (ECF No. 1 at 31.) Because the Wyoming Supreme Court would likely not recognize a tort for negligent termination at all, and would require a plaintiff to pursue a breach of contract claim instead, the Court likewise finds that no negligent termination action is expressly recognized as a statutory

exception to sovereign immunity under the WGCA, despite the Act's abrogation of sovereign immunity for peace officers under Wyo. Stat. § 1-39-112.

    2.5 <u>Gross Negligence and Willful and Wanton Misconduct</u>

    Furthermore, gross negligence "is not a separate cause of action from ordinary negligence" under Wyoming law, "and will not support a claim for punitive damages." *Vance v. Wyomed Lab'y, Inc.*, 375 P.3d 746, 749 (Wyo. 2016). "An allegation of willful and wanton misconduct can support a claim for punitive damages, but it is also not a separate cause of action" from negligence. *Id.* Because there is no express waiver of sovereign immunity for the tort of negligent termination under the WGCA, there can be no waiver of sovereign immunity for Plaintiff's claims that he was terminated as a product of gross negligence or willful and wanton misconduct, as these claims are not separate causes of action from ordinary negligence under Wyoming law but rather degrees of the "unreasonableness" of the tortious conduct. Even if they were separate claims, the WGCA, Wyo. Stat. Ann. § 1-39-118(d), provides that "[n]o judgment against a governmental entity shall include an award for exemplary or punitive damages, for interest prior to judgments or for attorney's fees." Accordingly, Plaintiff's claim for negligence, gross negligence, and willful and wanton misconduct related to his termination by the Powell Police Department (Plaintiff's Seventh and Eleventh Claims for Relief) must be dismissed on grounds of sovereign immunity against all City Defendants. Likewise, any request for punitive damages against the City Defendants must also be dismissed.

    2.6 <u>Notice of Claim Requirements Under Wyo. Stat. § 1-39-113(a)</u>

    Finally, the City Defendants argue that Plaintiff's state-law tort and contract claims against them must also be dismissed because Plaintiff did not comply with the WGCA claim notice requirement under Wyo. Stat. § 1-39-113(a). (ECF No. 11 at 10–12.) Under the WGCA, "as a

condition precedent" to suing a government entity for contract or tort, a plaintiff is "required to present his notice of claim as an itemized statement in writing to the business office of the governmental entity within two years of the date of the alleged wrongful act, error, or omission." *Mitchell v. Rust*, 529 P.3d 1062, 1067 (Wyo. 2023), *reh'g denied* (June 20, 2023) (citing Wyo. Stat. § 1-39-113(a), (c)). Failure to comply with the notice requirements under the WGCA is an absolute bar to a Plaintiff's claim, and a district court may dismiss a plaintiff's complaint for failure to comply with the notice requirements. *Mitchell*, 529 P.3d at 1067 (citing *Peterson v. Sweetwater Cnty. Sch. Dist. No. One*, 929 P.2d 525, 529 (Wyo. 1996)).

The City Defendants assert that Plaintiff failed to provide an adequately itemized or categorized statement of his alleged damages as required by the statute. (Id. at 11.) Plaintiff contends, however, that a categorization of his specific damages is not required and that he complied with the notice requirements under the WGCA, Wyo. Stat. § 1-39-113. (ECF No. 14 at 16–17.) In *Excel Const., Inc. v. Town of Lovell, Wyoming*, 268 P.3d 238, 241, 242–43 (Wyo. 2011) the Wyoming Supreme Court rejected the notion that the Wyoming constitution, Article 16, Section 7, or the WGCA, § 1–39–113(b)(iii), "mandat[ed] some level of categorization of damages demanded by a claimant." In that case, the plaintiff sued the Town of Lovell, Wyoming and presented in its notice of claim a total damages amount for "$2,688,173.80" but failed to include a more detailed breakdown and categorization of damages which plaintiff had prepared but failed to append. *Id.* at 239–40. The Wyoming Supreme Court held that the plaintiff had nevertheless complied with the constitutional and statutory itemization requirements by merely identifying the precise dollar amount of damages it was seeking in its claim. *Id.* at 243. The court stated that its jurisprudence on this matter recognized that the purpose of the notice of claim requirement "is served, and the statutory and constitutional itemization requirements are met, when a claimant

specifies the dollar amount of damages being demanded." *Id.* at 241. Those prior decisions "did

not depend on the claimants' classification or categorization of the damages in their notices of

claim. . . . The critical finding in each of the cases was the claimant's specification of the amount

they were requesting in damages." *Id.* at 242.

Plaintiff, as in *Excel Constr., Inc.*, submitted to the city of Powell's clerk, Tiffany Brando[10],

a notice of claim, incorporated into Plaintiff's Complaint as Exhibit A, which identified "the

amount of compensation demanded" as "$1,100,000.00." (ECF No. 1-1 at 3.) Here, pursuant to

*Excel Constr., Inc.*, the Court sees no fatal error with the itemization of Plaintiff's compensatory

damages in his notice of claim, when he has identified and specified the total amount he was

requesting in damages. Plaintiff need not provide an additional categorization or classification of

damages to comply with the WGCA or Article 16, Section 7 of the Wyoming Constitution. The

claim notice requirements under the WGCA and Wyoming Constitution therefore do not require

that Plaintiff's remaining state-law claims be dismissed.

### 3. Plaintiff's State Law Breach of Contract & Promissory Estoppel Claims[11]

Plaintiff's Complaint asserts causes of action for Breach of Contract (Eighth Claim for

Relief) and Promissory Estoppel (Ninth Claim for Relief) only against the City of Powell,

Wyoming. (ECF No. 1 at 28–30.) The City of Powell moves to dismiss Plaintiff's Eighth and Ninth

claims, arguing: (1) "Plaintiff's complaint fails to plead sufficient facts to establish a legally

enforceable contract"; and (2) Plaintiff has not pled in the alternative facts adequate to assert a

---

[10] For a suit brought against a "city or town, including its agencies, instrumentalities and institutions" notice must be served upon the city or town clerk. Wyo. Stat. § 1-39-113(c)(ii).
[11] Under the WGCA, "a governmental entity has no immunity from contract claims so long as the claims procedures in § 1–39–113 are followed." *Scott v. Sch. Dist. No. 6*, 815 F. Supp. 424, 426–27 (D. Wyo. 1993). The Wyoming Supreme Court has extended this rule to contracts made in the employment context. *Allen v. Lucero*, 925 P.2d 228, 230 (Wyo. 1996), *overruled on other grounds by Brown v. City of Casper*, 248 P.3d 1136 (Wyo. 2011). Accordingly, the City of Powell does not move to dismiss Plaintiff's breach of contract or promissory estoppel claims on the basis of sovereign immunity. (*See* ECF No. 11 at 8–10.)

claim for promissory estoppel. (ECF No. 11 at 8–10.) Plaintiff responds that his Complaint pleads sufficient facts to support claims for implied contractual relationship and promissory estoppel. (ECF No. 14 at 17–19.)

For employment contracts, "Wyoming recognizes the at-will employment doctrine, which allows either an employee or an employer to end the employment relationship at any time for any reason or for no reason." *Worley*, 1 P.3d at 620. However, the presumption of "at-will" employment may "be overcome by either an implied-in-fact contract or an express contract." *Id*. "When parties act in a manner conveying mutual agreement and an intent to promise, an implied-in-fact contract may arise." *Id*.

To determine whether job security is part of an implied employment contract, the court must use "an objective test." *Id*. Under that test, "contractual obligation is imposed not on the basis of the subjective intent of the parties, but rather upon the outward manifestations of a party's assent sufficient to create reasonable reliance by the other party." *McDonald v. Mobil Coal Producing, Inc.*, 820 P.2d 986 (Wyo. 1991). For example, "[a]n employment handbook or personnel policies, letters of employment, performance evaluations and an employer's course of dealing may supply terms for an implied-in-fact employment contract which requires termination for cause only unless it contains a sufficient disclaimer." *Worley*, 1 P.3d at 621. "[W]hether an implied contract exists which creates a property interest in employment normally is a question of fact for the jury." *Anglemyer*, 58 F.3d at 537.

The Wyoming Supreme Court has also adopted promissory estoppel as a theory for recovery in the employment context. *Worley*, 1 P.3d at 623. It is a doctrine which seeks to protect "employees who in good faith detrimentally rely upon an employer's actions, in turn binding the employer to fulfill a promise to an employee despite the lack of an employment contract." *Id*. It is

meant to be used when an employee is unable to bring a breach of contract claim, due to a lack of

consideration. *Id.* As such, the elements of a promissory estoppel claim are:

> [(1)] the existence of a clear and definite agreement; [(2)] proof that the party urging
> the doctrine acted to its detriment in reasonable reliance on the agreement; [(3)] and
> the equities support the enforcement of the agreement.

*Id.*; *City of Powell v. Busboom*, 44 P.3d 63, 66 (Wyo. 2002) (stating the third element as "a finding

that injustice can be avoided only if the court enforces the promise."). The first two elements are

questions for the factfinder while the third element is decided as a matter of law by the court. *Id.*

at 623–24.

> In this case, Plaintiff's Complaint alleges that the City of Powell,
>
> created a contract between itself and Officer Davis due to (1) promises of
> employment through written communications from The City of Powell, Wyoming
> to Officer Davis, (2) a probationary process and review process wherein Officer
> Davis was told that he would be guaranteed employment with satisfactory marks,
> (3) policies and procedures in the City's employee handbook and written polices
> and memorandums, (4) the City's course of dealing with, and promises to, Officer
> Davis, (5) the City's course of dealing and conduct in the past with other
> employees.

(ECF No. 1 at 28–29, ¶ 81.) No disclaimer from the City of Powell notifying Plaintiff of at-will

employment is mentioned in the Complaint or raised by the City of Powell. *See e.g., Worley*, 1

P.3d at 621 ("A valid, conspicuous, and unambiguous disclaimer notifying employees of their at-

will employment status can preclude a progressive discipline policy from forming an implied

contract.") As a result of these representations, Plaintiff alleges that he "and his family took the

difficult steps needed to wrap up their lives in Sacramento and spent many thousands of dollars to

make the move" from California to Wyoming for Plaintiff to take the job at the Powell Police

Department. (Id. at 8, ¶¶ 23; 30, ¶¶ 88.) During his employment, Plaintiff alleges that he "excelled

at his duties, [as] evidenced by his review scores" and relied on the policies of the Powell Police

Department regarding his accommodation and continued employment when he became sick. (Id.

at 29–30.)

While certain of these allegations are conclusory, the Court finds that Plaintiff's assertions

that he was given written communications of employment from the City of Powell and promised

a probationary process guaranteeing employment if he performed satisfactorily, are adequate to

state a plausible claim for implied contract under Wyoming law. Plaintiff's allegations, when

assumed to be true and construed in the light most favorable to Plaintiff, also state a claim for

promissory estoppel. Plaintiff alleged with particularity that a clear and definite agreement

between himself and the City of Powell existed, and that Plaintiff and his family acted in reliance

upon that agreement to their detriment by relocating from California to Wyoming, and that

injustice will only be avoided by enforcing the agreement. Plaintiff has adequately pleaded

plausible claims for breach of contract and promissory estoppel against the City of Powell to

survive a 12(b)(6) motion to dismiss.

### 4. Redundancy of Official Capacity Suits

Finally, the City Defendants request that Defendants Brando, Thorington, Eckerdt, and

McCaslin be dismissed as Defendants in their "official capacity" because they are "unnecessarily

redundant" Defendants in a suit against the City of Powell. (ECF No. 11 at 12.) "[O]fficial-capacity

suits generally represent only another way of pleading an action against an entity of which an

officer is an agent[.]" *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n. 55

(1978). Therefore, as this Court has previously noted, a suit against named defendants in their

"official capacities" in addition to a municipal defendant, "is unnecessarily redundant." *Van Dam*

*v. Guernsey*, 2021 WL 1774137, at *5 (D. Wyo. May 4, 2021) (dismissing named the named

defendants in their official capacities when the Town of Guernsey was also a Defendant.)

Plaintiff's request is accordingly granted, and Defendants Brando, Thorington, Eckerdt, and

McCaslin are dismissed as Defendants in their "official capacities" for all of Plaintiff's remaining claims.

## CONCLUSION

For the foregoing reasons, the City Defendants motion to dismiss is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's federal claims for Wrongful Termination in Violation of 42 U.S.C. 1983 and the ADA; Retaliation under 42 U.S.C. § 1983 and the ADA; Violation of the First Amendment under 42 U.S.C. § 1983; Conspiracy to Interfere with Civil Rights under 42 U.S.C. § 1985; and Violation of Substantive Due Process under the Fourteenth Amendment and 42 U.S.C. § 1983 are dismissed in their entirety for all Defendants, in either their "official" or "individual" capacities.

Additionally, Plaintiff's state tort claims for Gross Negligence or Willful or Wanton Misconduct, Breach of Implied Covenant of Good Faith and Fair Dealing, Negligence, and Intentional Infliction of Emotional Distress against the City Defendants are also dismissed on the grounds of sovereign immunity under the Wyoming Governmental Claims Act. All claims against Roy Eckerdt, Matt McCaslin, Tiffany Brando, and Zack Thorington in their "official capacities" as well as Plaintiff's request for punitive damages are also dismissed.

However, the City of Powell's requests to dismiss Plaintiff's claims for Violation of Procedural Due Process under the Fourteenth Amendment and 42 U.S.C. § 1983, Breach of Contract, and Promissory Estoppel are denied.

**IT IS SO ORDERED**.

**DATED:** May _23rd_, 2024.

Scott W. Skavdahl
United States District Judge