Thomas A. Thompson [Wyo. State Bar No. 6-2640]
Wyoming Local Government Liability Pool
6844 Yellowtail Road
Cheyenne, Wyoming 82009
(307) 638-1911
(307) 638-6211 Facsimile
tthompson@lglp.net

Attorney for Defendant City of Powell, Wyoming

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| RYAN DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 23-CV-230-S |
| v. | ) | |
| | ) | |
| THE CITY OF POWELL, WYOMING, | ) | |
| | ) | |
| Defendant. | ) | |

---

## DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR
## SUMMARY JUDGMENT

---

COMES NOW the Defendant, City of Powell, Wyoming, (hereinafter "Defendant"), by and through its attorney, and submits its Brief in Support of Motion for Summary Judgment.

## I. <u>SUMMARY OF CLAIMS</u>

Plaintiff filed his Verified Complaint on December 5, 2023 (ECF No. 1). Defendants City of Powell, Wyoming, Roy Eckerdt and Matt McCaslin in their official capacities, and Tiffany Brando and Zack Thorington in both their individual and official

capacities filed their Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss (ECF No. 10). The Court considered the arguments of the parties, reviewed the record and granted in part and denied in part Defendants' Motion to Dismiss (See ECF No. 18). The order dismissed "Plaintiff's federal claims for Wrongful Termination in Violation of 42 U.S.C. 1983 and the ADA; Retaliation under 42 U.S.C. § 1983 and the ADA; Violation of the First Amendment under 42 U.S.C. §1983; Conspiracy to Interfere with Civil Rights under 42 U.S.C. §1985; and Violation of Substantive Due Process under the Fourteenth Amendment and 42 U.S.C. §1983" for all Defendants, in either their "official" or "individual capacities" (ECF No. 18, p. 36).

The Court's order also held that "Additionally, Plaintiff's state tort claims for Gross Negligence or Willful or Wanton Misconduct, Breach of Implied Covenant of Good Faith and Fair Dealing, Negligence, and Intentional Infliction of Emotional Distress against the City Defendants are also dismissed on the grounds of sovereign immunity under the Wyoming Governmental Claims Act. All claims against Roy Eckerdt, Matt McCaslin, Tiffany Brando, and Zack Thorington in their "official capacities" as well Plaintiff's request for punitive damages are also dismissed." *Id.*

By separate order this Court also granted a motion to dismiss filed by Defendants Roy Eckerdt, Matt McCaslin, Tiffany Brando, and Zach Thorington in their individual or personal capacities (ECF No. 19, p. 12). Finally, this Court dismissed with prejudice Plaintiff's Thirteenth Claim for Relief for Civil Conspiracy. *Id.* The only claims that this Court did not dismiss were Plaintiff's claims for Violation of Procedural Due Process

under the Fourteenth Amendment and 42 U.S.C. § 1983, Breach of Contract, and Promissory Estoppel (ECF No. 18, p. 36). By virtue of the Court's rulings the only remaining Defendant is the City of Powell.

The Plaintiff sought and was granted leave of the Court to file an Amended Verified Complaint. Plaintiff's Amended Verified Complaint was filed July 15, 2024, and alleges five causes of action: Failure to Accommodate under the Americans with Disabilities Act (ADA); a Retaliation claim under the ADA; Violation of Procedural Due Process; Breach of Contract and Promissory Estoppel. Plaintiff brings the due process claim and breach of contract claim, alleging that he was a "for cause" employee of the City of Powell (ECF No. 34).

## II.  STATEMENT OF MATERIAL FACTS

### A. Application and Hiring Process with the City of Powell

1.  On or about September 3, 2020 Plaintiff submitted an Application for Employment with the City of Powell. (Exhibit A, Ryan Davis Deposition, Exhibit 4).

2.  On October 1, 2020 Plaintiff acknowledged receipt of a Conditional Offer of Employment from the City of Powell. (Exhibit B, Davis deposition, Exhibit 5).

3.  The first sentence of the Conditional Offer of Employment states: "This agreement constitutes a conditional offer of employment from the Powell Police to the applicant for the position of **probationary police officer**." *Id.* (Emphasis added).

4.   The Conditional Offer of Employment also noted that: "The applicant, if selected shall receive a final offer of employment **subject to a one-year probationary period** after all conditions have been satisfied, and the Powell Police have available a vacancy at the position offered." (Exhibit C, Davis Deposition, p. 93, Lines 2-8). (Emphasis added.)

5.   Plaintiff acknowledged that when he signed the Conditional Offer of Employment that he understood he would be a one-year probationary employee with the City of Powell. *Id.*, p. 93, Lines 10-16.

6.   Plaintiff was given a final offer of employment dated December 11, 2020. *Id.*, p. 95, Lines 20-25, p. 96, Lines 1-9, and Exhibit D, Davis Deposition, Exhibit 6.

7.   Plaintiff was hired as a Police Officer I for the City of Powell and was provided with a Job Description for his job. The Job Description for Police Officer I included a listing of essential functions of the job. *Id*., p. 95, Lines 23-25, p. 96, Lines 1-6, Exhibit E, Davis Deposition, Exhibit 7.

8.   On March 1, 2021, Plaintiff signed the Job Description and acknowledged by his signature that he had reviewed the Job Description. *Id.*, p. 98, Lines 14-24, Exhibit E.

9.   Plaintiff understood that the Job Description of Police Officer I included essential functions that Plaintiff was expected to perform. Plaintiff does not believe that the essential functions of his job changed during the time he was employed with the City of Powell. *Id.*, p. 96, Lines 2-13.

10. One of the special qualifications of Plaintiff's job as a Police Officer I was to acquire and maintain Wyoming POST peace officer certification. During the time Plaintiff was employed with the City of Powell he received a temporary certification but never completed all requirements to receive Wyoming POST certification. *Id.*, p. 96, Lines 25; p. 97, Lines 1-2.

11. Plaintiff acknowledged receipt of the City of Powell Personnel Policies & Procedure manual. *Id.*, p. 106, Lines 3-20.

12. Plaintiff admitted that the City of Powell Personnel Policies & Procedures were not intended to be a contract. *Id.*, p. 108, Lines 8-19, Exhibit F, Davis Deposition, Exhibit 8.

13. Plaintiff admitted that a disclaimer included an underlined, bold, large font at the bottom of the second page of the Personnel Policies & Procedures. *Id.* and Exhibit G, POWELL 0155-0156.

14. The Personnel Policies provide a definition for a "Probationary Employee." *Id.*, p. 108, Lines 23-25; p. 109, Lines 1-12 and *Id.*, at POWELL 0160.

15. The Personnel Policies include a section titled "Probationary Period." It states that: "Law enforcement personnel are required to serve a probationary period of one year." *Id.*, p. 111, Lines 1-8 and *Id.*, at POWELL 0163, 0174.

16. The Personnel Policies also include a section titled "New Employee." It states "**Probationary employees are at will** and may be removed at any time during the probationary period without prior notice. Such a removal shall not be subject to appeal.

During the probationary period, any employee may leave without prior notice to the City." POWELL 0163 and Exhibit C, p. 112, Lines 12-20 (Emphasis added).

17. The Personnel Policies include a section on Disciplinary Action and Procedure but state that the procedures outlined in that section do not apply to probationary employees who are at-will and subject to termination at any time with or without cause. *Id*., at POWELL 0184.

18. The Personnel Policies included an Equal Opportunity Statement which prohibit discrimination. During the term of his employment, Plaintiff never filed a grievance or complaint of discrimination with the City of Powell. Exhibit C, p. 109, Lines 21-25; p. 110, Lines 1-15 and *Id*., at POWELL 0161.

**B. COVID Diagnosis and Treatment**

19. According to a Report of Injury that was filed with the State of Wyoming Workers' Compensation Division, on October 1, 2021 Plaintiff suffered what was at the time considered by Wyoming Workers' Compensation Division to be a compensable work injury. Plaintiff was exposed to and subsequently diagnosed with COVID-19. At the time Plaintiff was initially diagnosed with COVID, it was presumed in Wyoming that any exposure was work related. Exhibit H, Report of Injury (POWELL 0246-0247).

20. Plaintiff was off of work from October 1, 2021 until he was terminated on January 7, 2022. Exhibit C, p. 114, Lines 18-25.

21. After being diagnosed with COVID, the Plaintiff applied for and received Temporary Total Disability (TTD) Benefits through Wyoming Workers' Compensation. TTD benefits were provided from October of 2021 through approximately March 24, 2022 when Plaintiff alleges he was released to return to employment. After his diagnosis of COVID the Plaintiff was provided with leave under the Family Medical Leave Act (FMLA) and was provided additional leave from the City's sick leave bank. *Id.*, p. 114, Line 24-25; p. 115, Lines 23-25.

22. After his COVID diagnoses the City of Powell was never provided with a medical release from Plaintiff, or from Plaintiff's medical providers which would have released him to return to work.

23. During the time period from his initial diagnosis of COVID 19, until his termination on January 7, 2022 the Plaintiff never provided the City of Powell with a return to work date.

24. On December 9. 2021 the Plaintiff was seen by his cardiologist, Dr. Brian Kelly. Dr. Kelly's chart notes from that visit states, "We will have another cardiology follow-up visit in 3 months." (Exhibit I, POWELL 0335-0336).

25. A medical record chart notes dated December 15, 2021 indicate that at that time, Plaintiff had not yet been cleared to return to work and was being followed by a cardiologist. (Exhibit J, POWELL 0325-0326).

26. Plaintiff's December 15, 2021 medical chart note indicates that Plaintiff should not be cleared to return to work as a police officer until his heart rate has dropped significantly, and he could tolerate fairly intense activity without severe tachycardia. *Id.*

### C. Termination of Employment

27. Plaintiff admitted in his deposition that as of January 7, 2021 when his employment with the City of Powell was terminated, he had not been cleared to return to work by a medical professional, and he could not perform the essential functions of his job.  Exhibit C, p. 97, Lines 12-24; p. 104, Lines 7-18.

28. During a meeting on January 7, 2022 with City personnel, Plaintiff acknowledged on multiple occasions that he understood he was a probationary employee, and **that his employment with the City of Powell was as an at-will employee**. *Id.*, p. 112, Lines 21-25; p. 113, Lines 1-2, Exhibit K, Davis Deposition Exhibit 1 (Emphasis added).

### D. City Administrator – Zachary "Zach" Thorington

29. Zachary Thorington (hereafter "Thorington") is the City Administrator for the City of Powell and held that position in January of 2022. (Exhibit L, Deposition of Zach Thorington, p. 5, Lines 5-9). Thorington oversees the day-to-day operation of the city. *Id.*, p. 8, Lines 10-13).

30. Thorington testified that after Plaintiff was diagnosed with COVID he recalled being informed that Plaintiff had been diagnosed with COVID, had filed a workers' compensation claim and was on FMLA. *Id.*, p. 26, Lines 1-21.

31. Thorington called Plaintiff to a meeting on January 7, 2022. Also present at that meeting were Tiffany Brando and Roy Eckherdt who at the time was the Powell chief of police. Thorington testified that the purpose of the meeting was "to see where we're at with his doctor's note, permission to return to work, of the form (Return-to-Work Release) we handed him or provided him." *Id.*, p. 27, Lines 12-17.

32. Plaintiff made a partial audio recording of the January 7, 2022 meeting and disclosed that audio recording to Defendant through discovery (Exhibit M, Audio recording (partial) of January 7, 2022 meeting).

33. A transcript of that audio recording was made for the purpose of this litigation. At the time of his deposition, Plaintiff read the transcript and testified that to the best of his memory it was a true and accurate transcript of the January 7, 2022 meeting. (Exhibit C, p. 12, Lines 17-22 and Exhibit K, Davis Deposition Exhibit 1).

34. Thorington made the decision to terminate Plaintiff during the January 7, 2022 meeting. (Exhibit L, p. 27, Lines 18-22).

35. Subsequent to his termination Plaintiff was given a letter dated January 7, 2022 Along with a copy of City policy 3.5 (Probationary Period) taken from the City Personnel Policy. The letter indicated that Plaintiff's employment with the City of Powell was terminated as of January 7, 2022. (Exhibit C, p. 119, Lines 1-21, Exhibit N, Deposition Exhibit 10).

36. Thorington testified that he terminated Plaintiff because he had not provided a return-to-work form, or doctors note as to when he could return to work. "It was open ended." (Exhibit L, p. 26, Line 25; page 27, Lines 1-5).

37. Plaintiff testified that he understood that probationary employees did not have the right to appeal their termination. (Exhibit C, p. 120, Lines 3-9).

### E. City Clerk and Human Resource Manager – Tiffany Brando

38. Tiffany Brando (hereafter "Brando") is the city clerk and human resource manager for the City of Powell. (Exhibit O, Deposition of Tiffany Brando p. 4, Lines 19-25; p. 5, Lines 1-4).

39. As human resource manager Brando is the direct contact for employees if they have questions on the City's personnel policies or procedures. Brando also assists employees with the FMLA process. *Id.*, p. 7, Lines 16-25; p. 8, Lines 1-12.

40. After Plaintiff was diagnosed with COVID 19 Brando testified that she provided Plaintiff with a note and Return-to-Work Release Form on City of Powell letterhead. The note indicated, "Enclosed are FMLA forms and a return-to-work form with a job description. We will need a release to return to work before returning. If you have any questions, please let me know. Thank you. Tiffany Brando." *Id.*, p. 47, Lines 19-25; p. 48, Lines 1-13, Exhibit P, Deposition Exhibit 16.

41. Brando testified that after learning that Plaintiff had COVID, workers' compensation started covering Plaintiff's illness. *Id.*, p. 49, Lines 2-4.

42. Sometime after October 1, 2021 but prior to his termination, Brando provided Davis an Application for Long Term Disability Income Benefits through The Hartford, which was an employee benefit. *Id.*, p. 43, Lines 14-25, pp. 44-45, and Exhibit Q, Deposition Exhibit 15.

43. Brando explained that she provided Davis with this application since he had been out of his job for 12 weeks and Powell had not received a Return-to-Work Release form from Plaintiff's medical provider. *Id.*, p. 45, Lines 15-19; p. 49, Lines 5-8.

**F. Former chief of police – Roy Eckherdt**

44. Roy Eckherdt was the Powell Chief of Police from 2011 until he retired in 2023. (Exhibit R, Deposition of Roy Eckherdt p. 10, Lines 2-13).

45. Eckerdt does not recall discussing any request for reasonable accommodation with Plaintiff. *Id.*, p. 60, Lines 5-25; p. 61, Lines 1-21.

46. Eckerdt doesn't recall the term "interactive process" ever being used in the context of Plaintiff. *Id.*, p. 62, Lines 1-9.

47. Eckerdt recalled that there was an informal meeting to discuss the need for something from Plaintiff's doctor regarding Plaintiff's status. *Id.*, p. 70, Lines 14-24.

48. Eckerdt recalls discussing Plaintiff's employment status and "how long this could go on." Staffing needs for police officers were also a concern and discussed. *Id.*, p. 71, Lines 2-25.

49. Eckerdt also recalled the need to get Plaintiff an extension for temporary peace officer certification. This was necessary because Plaintiff's temporary peace officer certification was going to expire. *Id.*, p. 71, Lines 21-25; p. 72, Lines 1-15.

50. Eckerdt doesn't recall Thorington, Brando, or himself discussing the Americans with Disabilities Act as it pertained to Plaintiff. *Id.*, p. 73, Lines 2-8.

### G. Dr. Kelly E. Christensen

51. Dr. Kelly E. Christensen is a family practice doctor who works at Powell Valley Healthcare Clinic in Powell, Wyoming. (Exhibit S, Deposition of Dr. Kelly E. Christensen, p. 7, Lines 13-25; p. 8, Lines 1-14).

52. Dr. Christensen saw and treated the Plaintiff on three (3) different occasions from October 19, 2021 through March 24, 2022. *Id.*, p. 41, Lines 22-25.

53. Dr. Christensen treated Plaintiff on January 11, 2022. As of the January 2022 visit there was no plan to see Plaintiff back in his office in March of 2022 and no plan that Plaintiff would be released to return to work on a specific date. *Id.*, p. 44, Lines 23-25; p. 45, Lines 1-25; p. 46, Lines 1-12.

54. Dr. Christensen released the Plaintiff to return to full duty on March 24, 2022. *Id.*, p. 37, Lines 1-7.

55. Dr. Christensen's release to return Plaintiff to full duty work occurred within six (6) months from Plaintiff's initial diagnosis of COVID. *Id.*, p. 39, Lines 18-25; p. 40, Lines 1-2.

### III.    LEGAL STANDARD FOR SUMMARY JUDGMENT

The Court shall grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This standard requires "there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A material fact is one that "might affect the outcome of the suit under the governing law." *Id.* at 248.

In considering the motion, the Court views the record and all reasonable inferences that might be drawn from it in the light most favorable to the party opposing summary judgment. *Dahl v. Charles F. Dahl, MD., P.C. Defined Ben. Pension Trust*, 744 F.3d 623, 628 (10th Cir. 2014). Generally, the moving party has "both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law." *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2003). If the moving party carries this initial burden, the nonmoving party may not rest on its pleadings but must bring forward specific facts showing a genuine dispute for trial as to those dispositive matters for which it carries the burden of proof. *Id*.

The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Rather, to survive a summary judgment motion, the nonmoving party must "make a showing sufficient to establish the existence

of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Further, when opposing summary judgment, the nonmoving party cannot rest on allegations or denials in the pleadings but must set forth specific facts showing that there is a genuine dispute of material fact for trial. See *Travis v. Park City Mun. Corp.*, 565 F.3d 1252, 1258 (10th Cir. 2009).

## IV.   ARGUMENTS

### A. Americans with Disabilities Act (ADA) Claims

#### 1.  Charge of Discrimination

Plaintiff's Amended Charge of Discrimination alleges that, "On or about October 3, 2021, I went out on COVID Leave. While on leave, I developed a disability." Nowhere in Plaintiff's Amended Charge does he identify what his disability is.  (Exhibit T, Amended Charge of Discrimination, p. 1). A Determination issued by the EEOC states that the "Charging Party alleges that Respondent failed to provide a reasonable accommodation for his disability on or about January 7, 2022." (Exhibit U, Determination, p. 1).  The Determination fails to identify what Plaintiff's disability is.

#### 2.  Amended Complaint – ADA Claims

Plaintiff's Amended Verified Complaint [ECF No. 34] contains the following allegations:

- Plaintiff alleges he was diagnosed with Long COVID-19, Pneumonia, and Tachycardia on December 9, 2021 [ECF No. 34 at ¶ 19].

- These diagnoses rendered the Plaintiff unable to be physically cleared to return to normal police officer duties. *Id.*

- Due to his medical condition, Plaintiff was not released to return to work on December 9, 2021, but was to return in three months to see his cardiologist and be reevaluated for his return to work. *Id.*

- "Officer Davis was disabled under the protections of the Americans with Disabilities Act evidenced by him being diagnosed with COVID-19, **a presumptive disability according to Wyoming Statute, W.S. § 27-14-102(xi)(A)**, a condition affecting his major life activities needing to perform his duties as a police officer. **Other than his disability**, Officer Davis was **otherwise qualified to perform the essential job functions** as a police officer." *Id.* at ¶ 33. (Emphases added).

Plaintiff's Amended Complaint [ECF No. 34] alleges two causes of action under the Americans with Disabilities Act (ADA). Plaintiff's first cause of action is set forth at ¶¶ 31-34 of the Amended Complaint and is titled "Failure to Accommodate." Plaintiff's Amended Complaint alleges that Plaintiff "was disabled under the protections of the Americans with Disabilities Act evidenced by him being diagnosed with COVID-19, a presumptive disability according to Wyoming Statute, entitled to protections under the Amended Complaint suggests the possibility of W.S. § 27-14-102(xi)(A). . .". *Id.* at ¶ 33. Plaintiff goes on to allege that Defendant failed to accommodate Plaintiff in not providing Plaintiff with "additional leave nor reasonable accommodations. Defendants did not pursue the possibility of temporary light duty." *Id.*

Plaintiff's second cause of action under the ADA is contained at ¶¶ 35-38 of the Amended Complaint and alleges an ADA retaliation claim. Plaintiff alleges that he was terminated in retaliation for being sick and costing the police department too much money. *Id.*, at ¶ 37.

### 3. The definition of "injury" contained at W.S. § 27-14-102(xi)(A) does not control whether a person has a "disability" under the ADA

Plaintiff's Amended Complaint relies upon the definition of "injury" under Wyoming Workers' Compensation law for authority that COVID-19 is a "presumptive disability" under the ADA. [ECF No. 34 at ¶ 33]. However, there is no legal authority to support Plaintiff's position that a person who suffers an "injury" as defined by W.S. § 27-14-102(xi)(A) is "disabled" under the ADA .

In 2020, at the time of the COVID pandemic, the Wyoming Legislature provided an amendment to the definition of "injury" under the Wyoming Workers' Compensation Act that read "if any employee in an employment sector for which coverage is provided by this act is infected with COVID-19 Coronavirus, it was presumed that the risk of contracting the illness or disease was increased by the nature of employment." Session Laws 2020, Sp. Sess., ch. 2, § 1. This presumption was extended to March 31, 2022. Session Laws 2021, ch. 118, § 2.  This appears to have been an attempt by the Wyoming Legislature to respond to the COVID pandemic and provided certain employees in Wyoming with Workers' Compensation benefits when they were diagnosed with COVID-19 illness or disease. It was presumed that if an employee contracted COVID, it occurred at work and was a compensable injury. Plaintiff was diagnosed with COVID, his COVID was reported to the Wyoming Workers' Compensation Division, and he received Workers' Compensation benefits up until March of 2022 for his COVID illness. There is no legal authority that would equate an "injury" under the Wyoming Workers' Compensation Act, with a "disability" under the ADA.

In review of the record, it is evident that the City of Powell viewed Plaintiff's illness as a compensable illness covered by Wyoming Workers' Compensation Act and not a disability under the ADA. This is supported by statements made at the meeting of January 7, 2022, including those by former police chief Eckerdt who corrected Plaintiff when Plaintiff referred to himself as "being on disability." Eckerdt noted that Plaintiff was on workers' compensation, not disabled. City clerk and human resource manager Tiffany Brando testified that after learning that Plaintiff had COVID, workers' compensation started covering Plaintiff's illness. (Exhibit O, p. 49, Lines 2-4).

At the meeting of January 7, 2022, it is evident that Plaintiff did not consider himself disabled as he even stated that "I am not on disability."

> MALE SPEAKER: I think because we play semantics and it comes up, we should probably ask the question, at what point did disability start?
> MR. DAVIS: Say it again.
> MALE SPEAKER: At what point did disability start?
> MR. DAVIS: What do you mean?
> MALE SPEAKER: That's exactly what I mean. **I don't think you're on disability, are you? You're on Workmen's Comp.**
> MR. DAVIS: **Workers' Compensation. Excuse me.** Sorry. But my --
> MALE SPEAKER: For clarification --
> MR. DAVIS: **You're right. Correct. Workers' Compensation. I -- I -- yes. I am not on disability.** Sorry. My mistake.
> MALE SPEAKER: Just -- just for clarification.
> MR. DAVIS: Correct. Of course. Of course. Yes. You -- you are correct. **So -- yeah. I'm on Workers' Compensation based upon what the State determines to be an on-the-job injury.** So -- and I -- I don't know. I had no intention for any of this --

(Exhibit K, p. 6, Lines 22-25; p. 7, Lines 1-20).

Plaintiff cannot rely upon the Wyoming Workers' Compensation Act to support his argument that due to his COVID-19 diagnosis he was disabled. In fact, a review of the

record clearly indicates that even Plaintiff did not regard himself as disabled under the ADA.

### 4. Plaintiff's COVID not a disability because it was "transitory and minor"

Plaintiff's Charge of Discrimination and Amended Complaint allege that Plaintiff had an actual disability. However, the ADA's definition of "disability" does "not apply to impairments that are transitory and minor." 42 U.S.C. § 12102(3)(B). An impairment is transitory if it has "an actual or expected duration of 6 months or less." *Id.* The ADA contemplates long-term disabilities that impair major life activities. Illness that are transitory in nature are not disabilities within the meaning of the ADA. *Adair v. City of Muskogee*, 823 F.3d 1297, 1306 (10th Cir. 2016) (noting that a plaintiff alleging disability must show that an impairment is neither transitory nor minor). Whether an impairment "is or would be 'transitory and minor' is to be determined objectively." 29 C.F.R. § 1630.15(f). See, *Champion v. Mannington Mills, Inc.*, 538 F. Supp. 3d 1344, 1349 (M.D. Ga. 2021) (explaining that to find millions of Americans "disabled" under the ADA would lead to absurd results).

Plaintiff was first diagnosed with COVID-19 on September 30, 2021, and the testimony of Dr. Christensen indicates that he released Plaintiff to return to full duty on March 24, 2022. (Exhibit S, p. 37, Lines 1-7). The actual duration of Plaintiff's COVID illness was less than six (6) months. Plaintiff's illness was transitory and minor, and by definition was not a disability under the ADA.

### 5.  Plaintiff was not "otherwise qualified"

As a threshold matter in order to establish a prima facie case for both his failure-to-accommodate claim and his retaliatory discharge claim, Plaintiff has to establish among other things, that he was "otherwise qualified." In a recent 10th Circuit decision, the court discussed this very issue and held as follows.

> The ADA defines a "qualified individual" as one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The focus is on whether the individual can "perform the essential functions of her job," with or without reasonable accommodations, at the time of the requested accommodation or adverse employment event, "or in the near future." *Aubrey,* 975 F.3d at 1006-07. The employee has the burden to show that a proposed accommodation is facially reasonable. *Id*. at 1010. "A proposed accommodation is not reasonable on its face if it would not enable the employee to perform the essential function[s] at issue." *Id*. (internal quotation marks omitted).

*Freeman v. City of Cheyenne*, No. 234-8022, 2024 U.S. App. Lexis 2883 at p. 5 (10th Cir. Feb.7. 2024).

It is undisputed that as of January 7, 2022, the date of his termination, the Plaintiff's medical providers had not released Plaintiff to return to work in any capacity. Plaintiff testified that as of January 7, 2022, he could not perform the essential functions of his job as a police officer. (Exhibit C, p. 97, Lines 12-24; p. 104, Lines 7-18). Medical records of Plaintiff's physicians indicate that Plaintiff was not released to return to work until at the earliest March 24, 2022.

Dr. Christensen, a family practice doctor who treated Plaintiff, testified that as of his office visit with Plaintiff on January 11, 2022, there was no scheduled follow-up appointment for March of 2022 and no plan that Plaintiff was going to be released to return

to work as of a specific date. (Exhibit S, p. 44, Lines 23-25; p. 45, Lines 1-25; p. 46, Lines 1-12).  It is undisputed that as of January 7, 2022, there was no date certain as to when Plaintiff would be released to return to work and Plaintiff never provided an expected return-to-work date to the City of Powell.  If Plaintiff cannot demonstrate that he was "otherwise qualified" both his failure to accommodate, and retaliation claims must fail.

### 6.  Plaintiff could not identify a reasonable accommodation

If Plaintiff was not able to perform the essential functions of his job as a police officer, the next part of the Court's analysis is to "determine whether any reasonable accommodation by the employer would enable him to perform those functions." *Adair v. City of Muskogee*, 823 F.3d 1297, 1307 (10th Cir. 2016); (quoting *Hawkins v. Schwan's Home Serv., Inc.*, 778 F.3d 877, 888 (10th Cir. 2015); *dem*, 92 F.4th 926, 932 (10th Cir. 2024). Regardless of any allegation by Plaintiff that the City of Powell failed to engage in the interactive process, it is the Plaintiff's burden at summary judgment to "show that a reasonable accommodation was possible." *Freeman v. City of Cheyenne*, No. 23-8022, 2024 U.S. App. LEXIS 2883, 2024 WL 464069, at *3 (10th Cir. Feb. 7, 2024) (holding in the context of a failure to accommodate claim "that even if an employer does not engage in the interactive process, a plaintiff cannot survive summary judgment unless she can also show that a reasonable accommodation was possible"); *Dansie v. Union Pac. R.R. Co.*, 42 F.4th 1184, 1194 n.2 (10th Cir. 2022) (addressing failure to accommodate claim and explaining that "failure to engage in the interactive process is not a standalone claim" and requiring plaintiff to show that employer failed to engage in interactive process and that a

reasonable accommodation was possible); *Brigham v. Frontier Airlines, Inc.*, 57 4th 1194, 1201 (10th Cir. 2023) (holding "[T]he failure to engage in an interactive process is not independently actionable under the [ADA].").

It is undisputed that Plaintiff never presented Powell with a return-to-work release. (Exhibit C, p. 97, Lines 12-24; p. 104, Lines 7-18). Plaintiff makes no allegation, and the record is devoid of any competent evidence that as of January 7, 2022 when Plaintiff was terminated that he could perform his job as a police officer, with or without a "reasonable accommodation." In fact, at the January 7, 2022 meeting Plaintiff stated that he could not get his doctor to release him to return to work.

> MR. DAVIS: . . . The only reason I am not back is because I am on Workers' Compensation. And my doctor, per City policy, will not sign the form releasing me to go back. That -- the City states that the doctor has to sign this form. I've presented that form to the doctors at every appointment that I've had. They have refused to sign it. That being said, if I could have got them to sign it, we wouldn't have this issue. I would be inside policy and I would be rehireable again. But you have a -- an employee of the City and department, one of my supervisors, tell me in a meeting that the department can't wait, while we're discussing the duration of Workers' Compensation, that it's going to be March before my next evaluation. . . .

(Exhibit K, p. 12, Lines 19-25; p. 13, Lines 1-10).

Plaintiff's argument that additional leave could have been a reasonable accommodation is not supported by record. Plaintiff had been off of work from October 1, 2021 up until the January 7, 2022 meeting. Plaintiff had used FMLA leave and leave from the City's sick bank. Plaintiff's doctors would not release him to perform any work. The record is devoid of any evidence that Plaintiff provided anyone at the City of Powell with an expected duration of his illness. Vague and uncertain references about a return-to-work

date do not suffice to meet the expected duration requirement. *Freeman v. City of Cheyenne*, at page 11, citing *Punt, Cisneros, and Hudson v. MCI Telecommunications Corp.*, 87 F.3d 1167 (10th Cir. 1996).

Plaintiff's argument that light duty would have been a reasonable accommodation is also without merit. A proposed accommodation is not reasonable on its face if it would not enable the employee to perform the essential functions at issue. *Aubrey v. Koppes*, 975 F.3d 995, 1010 (10th Cir. 2020); see also, *Burr v. T-Mobile USA, Inc.*, No. 23-2524-DDC-BGS, 2024 U.S. Dist. LEXIS 123966, at *6 (D. Kan. July 15, 2024). Plaintiff admitted that as of the January 7, 2022 meeting he could not perform the essential functions of his job as a police officer for the City of Powell. (Exhibit C, p. 97, Lines 12-24; p. 104, Lines 7-18).

Plaintiff cannot meet his burden of demonstrating that his suggestions of temporary light duty or additional leave were reasonable accommodations because neither of these suggested accommodations would have allowed Plaintiff to perform the essential functions of his job.

**B. Plaintiff's Due Process, Breach of Contract and Promissory Estoppel Claims are not supported by the record**

**1. Plaintiff's employment with Powell was as an "at-will" employee: There are no facts to support a breach of contract or due process claim.**

In Wyoming, the courts have recognized that all employment occurs by either express or implied contract. *Wilder v. Cody*, 868 P.2d 211, 216 (Wyo. 1994). There are two types of employment relationships—employment which require cause for termination and

at-will employment. *Id.* at 217-19; *Brodie v. General Chemical Corp.*, 934 P.2d 1263, 1265 (Wyo. 1997). "[E]mployment is presumed to be at will unless an express or implied contract states otherwise." *McLean v. Hyland Enterprises, Inc.*, 2001 WY 111, ¶ 21, 34 P.3d 1262, 1268 (Wyo. 2001).

Employers do have a means to avoid formation of an implied in fact contract of employment while still presenting the employee with useful information about required performance on the job. The employment at-will presumption of Wyoming law may be sustained when unambiguous language disclaiming the formation of a contract is sufficiently conspicuous and present in documents that would otherwise comprise terms of an implied in-fact contract of employment. *Sanchez*, 855 P.2d at 1259; *McDonald v. Mobil Coal Producing, Inc.,* 820 P.2d 986, 988 (Wyo. 1991) (McDonald II).

When properly drafted, a sufficient disclaimer constitutes an express statement in the employment application and subsequent relevant documents, such as an employee handbook, that places the employee on notice that general statements or conduct do not promise employment security and are not to be relied upon by the employee. 1 Henry H. Perritt, Jr., Employee Dismissal Law and Practice § 4.25 at 310 (3rd ed. 1992). A conspicuous and unambiguous disclaimer would then make any reliance on the subsequent statements of the employer unreasonable. *Lincoln v. Wackenhut Corp.*, 867 P.2d 701, 703 (Wyo. 1994).

On October 1, 2020, Plaintiff acknowledged receipt of a Conditional Offer of Employment from the City of Powell. (See Exhibit B). The first sentence of the Conditional Offer of Employment states: "This agreement constitutes a conditional offer of employment from the Powell Police to the applicant for the position of probationary police officer." The Conditional Offer of Employment also provided that: "The applicant, if selected shall receive a final offer of employment **subject to a one-year probationary period** after all conditions have been satisfied, and the Powell Police have available a vacancy at the position offered." (Emphasis added) **(**Exhibit C, p. 93, Lines 2-8). Plaintiff acknowledged that when he signed the Conditional Offer of Employment that he understood he would be a one-year probationary employee with the City of Powell. *Id.*, p. 93, Lines 10-16.

Plaintiff was given a final offer of employment dated December 11, 2020.  *Id.*, p. 95, Lines 20-25, p. 96, Lines 1-9, Exhibit D. Plaintiff was hired as a Police Officer I for the City of Powell and was provided with a Job Description for his job.

Plaintiff admitted receipt of the City of Powell Personnel Policy & Procedure manual. *Id.*, p. 106, Lines 3-20. Plaintiff admitted that the City of Powell Personnel Policies & Procedures were not intended to be a contract. *Id.*, p. 108, Lines 8-19, Exhibit F.  Plaintiff admitted that the Personnel Policies & Procedures included a disclaimer that was underlined, bold, and in large font at the bottom of the second page. *Id.*, and Exhibit G.

The Personnel Policies also provide a definition for a "Probationary Employee." *Id.*, p. 108, Lines 23-25; p. 109, Lines 1-12 and Exhibit G. The Personnel Policies include a section titled "Probationary Period." It states that: "Law enforcement personnel are required to serve a probationary period of one year." *Id.*, p. 111, Lines 1-8 and Exhibit G.

The Personnel Policies also include a section titled "New Employee." It states "Probationary employees are at will and may be removed at any time during the probationary period without prior notice. Such a removal shall not be subject to appeal. During the probationary period, any employee may leave without prior notice to the City." *Id.*, p. 112, Lines 12-20. The Personnel Policies include a section on Disciplinary Action and Procedure but state that the procedures outlined in that section do not apply to probationary employees. Exhibit G.

The record in this case overwhelmingly supports only one conclusion- that Plaintiff was a probationary, at-will employee at the time of his termination from employment with the City of Powell. The record is devoid of any evidence that Plaintiff 's employment status was ever "for cause".

During the meeting of January 7, 2022 in which Plaintiff was terminated, Plaintiff admitted on numerous occasion that he understood he was a probationary employee and "at-will". (Exhibit K, pp. 4, 8, 13, 26). At no time during this meeting did Plaintiff assert that he had a continued expectation of employment or that he was anything other than an "at-will" employee.

### 2. Plaintiff cannot state a procedural due process claim.

This Court has provided a detailed analysis of what Plaintiff must show to prevail on a procedural due process claim. *Order Granting in Part and Denying in Part City Defendants' Motion to Dismiss* [ECF No. 18, pp. 14-18 and 21-23]. Rather than re-state the controlling law on procedural due process, the Defendant relies upon the Court's analysis and incorporates by reference the Court's prior holding.

Plaintiff's procedural due process claim cannot survive summary judgment, because as stated above, Plaintiff was clearly an "at-will" employee and he did not possess a property interest in his employment with the Powell Police Department. Plaintiff must demonstrate a legitimate claim of entitlement in continued employment, not merely a 'unilateral expectation' or 'abstract need or desire for it'. *Zwygart v. Bd. Of Cnty. Comm'rs of Jefferson Cnty., Kan.*, 483 F.3d 1086, 1093 (10th Cir. 2007).

### 3. Plaintiff cannot state a claim for promissory estoppel.

In *Worley v. Wyoming Bottling Co., Inc.*, 1 P.3d. 615 (Wyo. 2000), the Wyoming Supreme Court explained the remedy of promissory estoppel and outlined the required elements of a promissory estoppel claim:

> Promissory estoppel provides relief for an "injury arising from actions or declarations which have been acted on in good faith and which would be inequitable to permit a party to retract." *Davis v. Davis*, 855 P.2d 342, 347-48 (Wyo. 1993) (quoting *Jankovsky v. Halladay Motors*, 482 P.2d 129, 132 (Wyo. 1971)).

> In the employment context, promissory estoppel works to prevent injustice to employees who in good faith detrimentally rely upon an employer's actions, in turn binding the employer to fulfill a promise to an employee despite the lack of an employment contract. Promissory estoppel may be

useful when, because of lack of consideration, an employee is unable to bring a breach of contract claim. As long as a promise is present, promissory estoppel can be used to satisfy the consideration element. *Terry v. Pioneer Press, Inc*., 947 P.2d 273, 277 (citing 1 Henry H. Perritt, Jr., Employee Dismissal Law And Practice § 4.39 (3d ed. 1992)).

The required elements of a promissory estoppel claim are: the existence of a clear and definite agreement; proof that the party urging the doctrine acted to its detriment in reasonable reliance on the agreement; and the equities support the enforcement of the agreement. *Loghry v. Unicover Corp*., 927 P.2d 706, 710 (Wyo. 1996).

*Michie v. Board of Trustees,* 847 P.2d 1006, 1009 (Wyo. 1993).

The Wyoming Supreme Court has held that a conspicuous disclaimer that indicates "at-will" employment defeats a promissory estoppel claim because such a disclaimer makes it unreasonable for an employee to rely on any subsequent understanding that her employment would be anything other than at will. *Loghry,* 927 P.2d at 711.

In this case, the evidence supports that the Plaintiff was an "at-will" employee. Plaintiff had actual knowledge of his "at-will" employment status. Furthermore, Plaintiff is deemed by contract law to have knowledge of the terms included in the Personnel Guidelines he acknowledged receipt of. The Personnel Guidelines contained both the "at-will" provision and the provision that explained that Powell would not be obligated by any oral statements or promises that were inconsistent with the Personnel Guidelines. This Court should hold that Plaintiff could not have reasonably relied upon any statements or practices that indicated that he was anything other than an at-will employee and that Defendant City of Powell is entitled to a summary judgment as a matter of law on this issue.

## V. CONCLUSION

Plaintiff is unable to set forth sufficient facts to establish a prima facia case for his ADA failure to accommodate or ADA retaliation claims. Plaintiff's claim of breach of contract and due process fail based upon the overwhelming evidence that Plaintiff was an "at-will" employee for the City of Powell. The conspicuous disclaimers in Powell's Personnel Policies, as well as Plaintiff's own admission that he was an "at-will" employee defeats Plaintiff's promissory estoppel claim. As a matter of law, Defendants are entitled to summary judgment on all claims. Defendant respectfully requests that this grant Defendant's Motion for Summary Judgment and for such other and further relief as the Court deems appropriate under the circumstances.

**DATED** this 20th day of February 2025.

/s/ *Thomas A. Thompson*
Thomas A. Thompson

## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed the foregoing with the Clerk of Court and the foregoing was served this 20th day of February 2025, by the following means:

Daniel B. Wilkerson                    [✓] CM/ECF/E-MAIL
Wilkerson Law Group
infowy@wilkersonlawgroup.com

/s/ MaryBeth Oatsvall
Wyoming Local Government Liability Pool