# Exhibit C

Ryan Davis Deposition Excerpts

1

```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF WYOMING


RYAN DAVIS, an individual,) Case No.:  23-CV-230-S
                          )
            Plaintiff,    )
                          )
vs.                       )
                          )
THE CITY OF POWELL,       )
WYOMING, ET AL.,          )
                          )
            Defendants.   )
_____)
```

DEPOSITION OF RYAN S. DAVIS

TAKEN ON BEHALF OF THE DEFENDANTS

AT POWELL, WYOMING

OCTOBER 1, 2024 AT 8:59 A.M.

REPORTED BY:

JOAN F. MARSHALL, C.S.R.
Notary Public

1  foundation, but not coach the witness in regards to
2  his answer.
3         MR. DANIEL WILKERSON:  So, yes, it's
4  understood that we don't coach the witness in
5  regard to his answer, but as I did there, to put a
6  foundation on the record for form -- or an
7  objection for form.
8         MR. THOMPSON:  Sure, I'm fine with an
9  objection as to form.
10        MR. DANIEL WILKERSON:  As to form.
11        MR. THOMPSON:  Yes.
12        MR. DANIEL WILKERSON:  Thanks, Tom.
13         (Whereupon, a recess was taken at 9:10
14  and subsequently reconvened at 9:21.)
15     A.    Okay.  Sir, I'm ready to proceed.
16  BY MR. THOMPSON:
17     Q.    Have you read that transcript, sir?
18     A.    Yes, sir.
19     Q.    Does it appear to be a true and accurate
20  transcript of the recording that you made of the
21  meeting that occurred on January 7th?
22     A.    To the best of my memory, yes.
23     Q.    And I'd represent to you what was done is
24  that the recording was provided to a court reporter
25  who then transcribed the recording.

93

1    A.    No, I didn't, not on this document.
2    Q.    So in the paragraph above
3  Acknowledgement, do you see that sentence that
4  states, "The applicant, if selected, shall receive
5  a final offer of employment subject to a one-year
6  probationary period after all conditions have been
7  satisfied, and the Powell Police have available a
8  vacancy at the position offered"?  Do you see that?
9    A.    Yes, I do.
10   Q.    And so when you signed this document back
11 on October 1st of 2020, exactly four years ago to
12 the day you are giving your deposition, you read
13 that paragraph, and you understood that you were
14 going to be a one-year probationary police officer
15 with the City of Powell?
16   A.    Yes.
17   Q.    And do you see the last sentence in that
18 paragraph?
19   A.    Yes, sir -- oh, sorry.  I'm going back to
20 the wrong paragraph.  It starts with, "The
21 effective date"?
22   Q.    The last sentence in that paragraph which
23 starts with, "Subject to the above."
24   A.    Oh, two sentences.  Yes, I see that.
25   Q.    What's that paragraph?  What's that read?

1   of employment after I had passed the background,
2   medical and -- I don't know -- after I passed the
3   background.
4       Q.   Signed by Chief Eckerdt?
5       A.   I see that, yes.
6       Q.   Is that correct?
7       A.   Yes.
8       Q.   And it's dated December 11, 2020?
9       A.   Yes.
10           (Whereupon, Davis Exhibit Number 7 was
11  marked for identification.)
12  BY MR. THOMPSON:
13      Q.   I'm going to hand you what's been marked
14  as Deposition Exhibit 7, Powell 0129 to 0130, ask
15  you to review that.
16      A.   Yes, sir.
17      Q.   Have you seen this before?
18      A.   Yes, I have.
19      Q.   Was this job description attached to the
20  conditional offer of employment?
21      A.   I don't remember, sir.  I mean it may
22  have been.  I don't know.
23      Q.   You understood that this was your job
24  description for Police Officer I with the City of
25  Powell when you were hired?

96

1   A. That I do.
2   Q. And you understood that this job
3 description included the essential functions that
4 you were required to perform in your capacity as a
5 Police Officer I?
6   A. Yes, sir.
7   Q. All right. And was this job description
8 ever changed during the less than one year that you
9 were employed with the City of Powell?
10   A. I don't believe so. I know there were
11 policy revisions. I can't speak to whether this
12 one was one of the revised, but as I sit here
13 today, I don't believe so.
14   Q. As you look at this deposition page 2,
15 which is Powell 0130, do you see that paragraph
16 numbered 3, Special Qualifications?
17   A. Yes.
18   Q. One of those special qualifications is
19 that you must acquire and maintain Wyoming POST
20 Basic peace officer certification. Do you see
21 that?
22   A. I do.
23   Q. And we've already talked about that. You
24 had temporary certification, but you never
25 completed all of the requirements to receive

97

1  Wyoming POST certification, correct?
2      A.   Correct.
3      Q.   And do you see under page 2, paragraph 4,
4  second page of this deposition exhibit, that it
5  refers to Work Environment?
6      A.   Yes.
7      Q.   And it states, "Tasks require a variety
8  of physical activities periodically involving
9  muscular strain related to walking, standing,
10 stooping, sitting and reaching."  Do you see that?
11     A.   Yes.
12     Q.   And then it goes on to talk about the
13 other essential functions or the work environment,
14 correct?
15     A.   Yes, it does.
16     Q.   And I believe this is contained in your
17 Complaint, and we can just pull that out and look
18 at that paragraph if needed, but I think this is an
19 easy enough thing to answer without looking at
20 that.  But you've alleged in your Complaint that
21 when you were terminated in January, that you could
22 not perform the essential functions of the job,
23 correct?
24     A.   In January, I could not.
25     Q.   Was there any job offer made to you in

98

1  writing other than the conditional offer of
2  employment and the final offer of employment that
3  we've already reviewed?
4      A.   I believe there was an official date of
5  employment signed by myself, Chief Eckerdt and Zack
6  Thorington.
7      Q.   Other than that, any other document other
8  than the conditional offer of employment and final
9  offer of employment?
10     A.   Did you say other than the one I just
11 mentioned, sir?
12     Q.   Yes.
13     A.   No.
14     Q.   And looking back at the job description
15 in front of you, is that your signature at the
16 bottom of the second page?
17     A.   Yes, it is, sir.
18     Q.   And do you see where it indicates under
19 the Disclaimer portion on the second page, that it
20 states, "Job descriptions are not intended to and
21 do not imply or create any employment,
22 compensation, or contract rights to any person or
23 persons"?
24     A.   Yes, I do.
25     Q.   You stated that you have a copy of the

104

1     A.    Yes.  He referred me to Dr. Kelly, the
2 cardiologist, who was not my primary care doctor.
3 And my understanding was he was kind of holding the
4 keys there to my -- because we were dealing with
5 cardiac issues, he was the doctor that was going to
6 sign the paperwork.
7     Q.    And I believe we've already covered this,
8 but prior to the January termination meeting, you
9 had never been cleared to go back to work with the
10 City of Powell?
11     A.    No, sir.
12     Q.    Is that correct?
13     A.    Yes, sir.
14     Q.    And as of the termination meeting, your
15 medical status had not changed, and you could not
16 perform the essential functions of that job,
17 correct?
18     A.    According to a medical professional.
19     Q.    And as far as documentation that you
20 provided to Ms. Brando or to Roy Eckerdt or to any
21 representative of the City of Powell, between your
22 initial diagnosis of COVID-19 and the termination
23 meeting, what documents did you -- medical records
24 or documents did you provide to the City?
25     A.    I believe I provided every medical

106

1  marked for identification.)
2  BY MR. THOMPSON:
3      Q.    Sir, I'm going to hand you what's been
4  marked as Deposition Exhibit 8.  It's Powell 0140,
5  ask you to take a look at that and tell me whether
6  or not you recognize this document.
7      A.    Yes.
8      Q.    What is it?
9      A.    It says the City of Powell Personnel
10 Policies and Procedure Review, certification that
11 I've read and understand the policies and
12 procedures.
13     Q.    Is that your signature on the document?
14     A.    It is.
15     Q.    Did you in fact receive and read and
16 understand the City of Powell Personnel Policies
17 when you were hired as a police officer for the
18 City of Powell?
19     A.    I received it.  I'll have to admit, if I
20 read every single word of it, probably not.
21     Q.    Why would you represent in this document
22 that you had read and understood it?
23     A.    Unfortunately, I believe -- I did receive
24 it, so I'm signing that I received it.  I can't --
25 I mean I kind of thought we were, unfortunately,

108

1  Personnel Policies and Procedures.
2      Q.   That you in the last exhibit acknowledged
3  that you received, read and understood, correct?
4      A.   Yes.
5      Q.   And would you turn to the second page
6  under Powell 0156.
7      A.   Yes.
8      Q.   Could you read out loud the underlined
9  bold, large font at the bottom of that second page.
10     A.   Yes.  "The Policies and Procedures Manual
11 is not intended to be contractual in nature, and
12 all policies and procedures contained in the manual
13 are legislative decisions made by the governing
14 body and are subject to change from time to time at
15 the pleasure of the governing body of the City of
16 Powell."
17     Q.   So you in reading this, you understood
18 that this was not intended to be a contract?
19     A.   Yes.
20     Q.   And let me have you turn to page 5, which
21 is Powell 0160.
22     A.   Yes.
23     Q.   Could read under the Definition section
24 1.3, the definition for probationary employee.
25     A.   Yes.  "Probationary Employee:  A new

1   employee who is considered to be employed for a
2   probationary period and who may be dismissed during
3   the probationary period without cause."
4        Q.   Did you understand the definition of
5   probationary employee?
6        A.   Do I understand it?
7        Q.   Did you understand it when you received
8   this manual?
9        A.   Well, yeah, I guess.  I mean,
10  unfortunately, I really didn't give it much
11  thought, but I understood that -- I understood that
12  I was hired and subject to a probationary period.
13       Q.   And subject to the personnel policies and
14  guidelines, correct?
15       A.   Yes.
16       Q.   And if you wanted a definition or you
17  wanted an understanding of the policy of the City
18  of Powell, you'd go to these policies or you'd talk
19  to HR?
20       A.   That -- yeah, that's accurate.
21       Q.   Let me have you turned to page 6 under
22  Powell 161.  Do you see that section 2.1, Equal
23  Opportunity Statement?
24       A.   Yes.
25       Q.   And it states that "Discrimination on the

```
                                                                 111
 1         Q.    Let me have you turn to page 8 under
 2    Powell 0163.  Do you see that section which is
 3    labeled 3.5 Probationary Period?
 4         A.    Yes.
 5         Q.    Read the second sentence under New
 6    Employees.
 7         A.    "Law enforcement personnel are required
 8    to serve a probationary period of one year."
 9         Q.    And you were a probationary employee as
10    set forth in the conditional offer of employment,
11    correct?
12         A.    No.  The conditional offer stated it, but
13    my offer of employment said Police Officer I.
14         Q.    Does this say all law enforcement
15    personnel except for Officer Davis are required to
16    serve a probationary period of one year?
17         A.    No, sir.
18         Q.    And the paragraph -- or the sentence
19    before that, how does that read under New
20    Employees?
21         A.    Before the first sentence?  So you're
22    saying the first sentence of the paragraph?
23         Q.    Yes.
24         A.    Would you like me to read it, sir?
25         Q.    Yes.
```

112

1   A.   "A full-time --"
2   Q.   It say all.
3   A.   "All full-time and part-time employees,
4   except for law enforcement personnel, are required
5   to serve a probationary period of six months."
6   Q.   So is it your understanding that this
7   paragraph says all employees have to serve six
8   months probationary period and law enforcement
9   personnel are required to serve a probationary
10  period of one year?
11  A.   Yes.
12  Q.   And if you go to the next paragraph under
13  this New Employee section, would you read that out
14  loud starting with probationary employees.
15  A.   Yes.  "Probationary employees are at will
16  and may be removed at any time during the
17  probationary period without prior notice.  Such a
18  removal shall not be subject to appeal.  During the
19  probationary period, an employee may leave without
20  prior notice to the City."
21  Q.   And you acknowledged on multiple
22  occasions during the termination meeting with
23  Tiffany Brando and Roy Eckerdt and Zack Thorington
24  that you were a probationary employee, that you
25  understood you were a probationary employee, and

1    that you were at will, correct?
2        A.    Yes.
3        Q.    And if you look at page 13 under
4    Powell 0168, section 3.14, what does that section
5    relate to?
6        A.    This 3.14 says Reemployment, sir.
7        Q.    You were told at that termination meeting
8    that you could be reemployed with the City of
9    Powell, correct?
10       A.    I was told -- I was not told that I could
11   be reemployed.  I was told that I could apply and
12   try again.
13       Q.    There was nothing that prohibited you
14   from future employment with the City of Powell
15   other than them not having a position available or
16   you not wanting to apply?
17       A.    That sounds accurate.
18       Q.    Once you were diagnosed with long-term
19   COVID, Ms. Brando assisted you with submitting an
20   injury report to the State of Wyoming Division of
21   Workers' Compensation, correct?
22       A.    Yes.
23       Q.    And did you know prior to her telling you
24   that COVID-19, if contracted during that period of
25   time, that there was a presumption that it occurred

114

1  in the workplace?
2     A.   I believe I -- in my process of my own
3  research, yes, I read that, and it was confirmed in
4  the paperwork submitted or that was given to me by
5  Ms. Brando.
6     Q.   And you acknowledged in the termination
7  meeting, as we've read in the transcript, that you
8  don't believe you contracted it on the job, you
9  contracted it at home?
10    A.   Absolutely not.
11    Q.   Okay.
12    A.   That was somebody else that made that
13 statement.
14    Q.   Okay.  You believe you contracted it on
15 the job?
16    A.   I believe there's no way to know how I
17 contracted it.
18    Q.   All right.  When you had COVID-19 and you
19 stayed out from the date that you were diagnosed
20 with COVID-19 or had that positive home test up
21 until the termination meeting, you were off of
22 work, correct?
23    A.   Yes.
24    Q.   And you were given Family Medical Leave
25 Act leave, correct?

115

1    A.   Yes.
2    Q.   And you did not qualify for FMLA when the
3    City gave you FMLA leave because you had not been
4    employed with the City for a year, correct?
5    A.   I disagree with that.
6    Q.   Did you look at the FMLA policy in the
7    employee manual?
8    A.   I read the FMLA policy from whatever,
9    their own website or. . .
10   Q.   Is it your testimony that you can receive
11   FMLA leave if you haven't been employed with an
12   employer for one year?
13   A.   Yes.
14   Q.   And where do you derive that knowledge
15   from?
16   A.   Because there's two categories of
17   qualification for FMLA, one year and hours worked.
18   And if you include all of my hours worked to
19   include overtime, I believe that I'm over the
20   required allotment of hours.
21   Q.   And that's your testimony?
22   A.   Yes, sir.
23   Q.   You were also given time from the sick
24   leave bank, correct?
25   A.   I -- yeah, I was given time, yes.

119

1          (Whereupon, Davis Exhibit Number 10 was
2     marked for identification.)
3     BY MR. THOMPSON:
4          Q.   Sir, I'm going to hand you what's been
5     marked as Deposition Exhibit 10 and ask you to take
6     a minute to review that.
7          A.   I'm familiar with this document, sir.
8          Q.   How are you familiar with it?
9          A.   This was the document I was given after
10    my termination meeting.
11         Q.   And who signed that document?
12         A.   Zack Thorington.
13         Q.   And what's attached to the first page of
14    that?
15         A.   The policy as regard to probationary
16    period.
17         Q.   Section 3.5?
18         A.   3.5 dated June 21 of '21.
19         Q.   And did you receive that when you
20    received the letter from Zack Thorington?
21         A.   Yes, I did.
22         Q.   You never appealed your termination with
23    the City of Powell?
24         A.   I was told I didn't have the right to.
25         Q.   Did you believe that was the case based

120

1  upon your review of the personnel policies, that
2  you didn't have the right to?
3      A.   Upon -- at the time everything was
4  occurring I didn't, but then of course I went back
5  and reread what I had and saw that it stated
6  probationary employees have no right to appeal.
7      Q.   And that's your understanding as you sit
8  here today?
9      A.   Yes.
10          MR. THOMPSON:  Well, it's 12:10, and I'm
11 sure people need to eat, so let's take a break and
12 come back at 1:15.
13          (Whereupon, a recess was taken at 12:09
14 and subsequently reconvened at 1:15.)
15          (Whereupon, Zach Thorington left and
16 Tiffany Brando entered the deposition.)
17 BY MR. THOMPSON:
18      Q.   We're back on the record.  You understand
19 you're still under oath?
20      A.   I do, sir.
21      Q.   I want to talk to you about some of the
22 damages that you're alleging in this lawsuit.
23      A.   Yes, sir.
24      Q.   I'll have the court reporter mark another
25 exhibit for us.